ISAAC HALL et al., Appellants, *v.* ELLEN HALL et al., Respondents.

Under the provision of the act of 1845, to enable resident aliens to hold and convey real estate (§ 1, chap. 115, Laws of 1845), which provides that a resi-

dent alien to whom any real estate had been or should thereafter be devised, might on filing the deposition of intention to become a citizen, etc., prescribed by the Revised Statutes (1 R. S. 720, § 15), hold the real estate the same as if he was a citizen at the time of the devise, a resident alien devisee of a citizen takes, upon acceptance of the devise, a conditional title, absolute as against the heirs of the testator, but defeasible by the State until he complies with the conditions as to aliens.

The provision, therefore, of the statute of wills (2 R. S. 57, § 4) declaring a devise to one who, at the time of the death of the testator, is an alien to be void, was modified by the said act in this respect.

The said act of 1845 is not retrospective solely, it applies to aliens who have become residents of this State subsequent to its passage.

Where a case presents a question of law solely upon uncontroverted facts, and a verdict merely formal is directed for plaintiff, it is not error for the trial court, in setting aside the verdict on motion, to direct final judgment for the defendant, at least where no objection to this course is made at the time.

(Argued April 5, 1880; decided June 1, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants entered upon an order setting aside a verdict in favor of plaintiffs, and directing judgment absolute for defendants. (Reported below, 13 Hun, 306.)

This was an action for partition, brought under the act of 1853 (ch. 238, Laws of 1853) in relation to disputed wills; plaintiffs, as heirs-at-law, claiming partition, of lands devised to and in possession of the defendants, Jeremiah B. and Susannah E. Spaulding.

William Hall, the testator, the common ancestor of the parties, was a naturalized citizen, residing in this State at the time of his death, July 26, 1861. He left no wife or children, but left surviving him his brother, Isaac Hall, his sister, Sarrissa Spalding, and the children of his deceased brother, Daniel Hall, his only heirs-at-law. William Hall, at the time of his death, was seized of the premises of which partition is sought in this action. He left a will, dated March 19, 1859, by which, among other things, he devised to the children of his sister Sarrissa a remainder in fee in the lands in controversy, limited upon a previous life estate therein, given by the will to his sister Sar-

rissa and her husband Thomas Spalding, for and during their joint lives and the life of the survivor. Thomas Spalding died before the testator, and Sarrissa Spalding died December 19, 1874. They were British subjects; they came to this country in 1857, and resided in this State from that time until they died. In November, 1857, they made and filed in the office of the Secretary of State the deposition prescribed by section 15, article 2, title 1, chapter 1, part 2, of the Revised Statutes. Thomas Spalding was never naturalized. Sarrissa Spalding was naturalized September 16, 1863, after the death of the testator. There were four children of Thomas and Sarrissa Spalding living at the death of the testator. They were born in England, and came with their parents to this country in 1857, became residents of this State, and continued to reside therein until after the testator's death. Prior to that time they had not made or filed the deposition prescribed by the Revised Statutes, nor had either of them been naturalized. Thomas Isaac, one of the children, died after the testator's death, and before the death of his mother, after having filed his declaration of intention to become a citizen prescribed by the act of Congress. The other children, Jeremiah B., Susannah E. and Ann Sarrissa, who are made defendants in this action, were naturalized after the testator's death, and before the death of their mother. The plaintiffs are children of the testator's brother, Daniel Hall.

*Sidney S. Harris* for appellants. The devisees, never having filed any deposition, and having been naturalized after the testator's death, are not competent to take, by virtue of such naturalization, which is not retroactive in its effects. (*Heney* v. *Brooklyn Ben. Society*, 39 N. Y. 333; *Luhrs* v. *Eimer*, Ct. of App., not reported; 1 R. S. 720, § 24 (15); 3 R. S. 5, § 24 (15), § 26 (17) [5th ed.]; Act of 1845, ch. 115, § 1; *Wright* v. *Saddler*, 20 N. Y. 320, 326; *Downing* v. *Marshall*, 23 id. 366; 2 R. S. 57, § 4; 3 R. S. 139, § 4 [5th ed.].) The testator's death is the time when the title must vest. (*Heney* v. *Brooklyn Ben. Society*, 39 N. Y. 333, 337;

*People* v. *Conklin*, 2 Hill, 67; *Kennedy* v. *Wood*, 20 Wend. 230; *Hefferman* v. *Estenheimer*. 66 Barb. 374, 377; *Smith* v. *Smith*, 33 Barb. 371, note.)

*T. J. Glover* for respondents. Susannah E. Spaulding, one of the devisees, being a resident of this State at the time of the testator's death, and having filed her deposition within a year thereafter, was competent to take and hold the devise to her. (*Wadsworth* v. *Wadsworth*, 12 N. Y. 376; 2 R. S. 57, § 4; Laws 1843, ch. 87, § 7; Laws 1845, ch. 115, § 1, p. 94.)

ANDREWS, J. The validity of the devise in remainder, in the will of William Hall, to the children of his sister Sarrissa, is the question presented in this case.

There is no question as to the competency of the testator to make a will disposing of the lands in controversy. He held them by an absolute and indefeasible title in fee, and having been naturalized before his death, he was not under the disability of alienage, and there was no impediment to his disposing of his lands by will to any person or persons whomsoever, provided only, that the devisees were, under our laws, competent to take by devise. If the children of the testator's sister Sarrissa were, at the time of the death of the testator, under no incapacity to take lands by devise, they took under the will of William Hall a valid remainder in fee of the premises in controversy, and the plaintiffs, who claim solely by descent as heirs-at-law of the testator, cannot maintain this action.

The validity of the devise to the children of Sarrissa Spalding is assailed on the ground of their alienage at the time of the death of the testator, and it is claimed to be void for that reason by force of the 4th section of the statute of wills (2 R. S. 57), which is as follows: "Every devise of any interest in real property to a person who, at the time of the death of the testator, shall be an alien, not authorized by statute to hold real estate, shall be void. The interest so devised shall descend to the heirs of the testator; if there be no such heirs competent to

take, it shall pass under his will to the residuary devisees named, if any there be competent to take such interest."

It is a principle of the common law that an alien may take lands by purchase (which includes all titles except such as are acquired by descent or by mere operation of law), and that the title so acquired is good except as against the State. (2 Kent, 54; *People* v. *Conklin,* 2 Hill, 67, and cases cited.) This general rule was not changed by the Revised Statutes, except in the single case provided for by the statute of wills. (*Wright* v. *Saddler,* 20 N. Y. 320.) Before that statute an alien could take lands by devise as well as by any other form of purchase, and hold until office formed. (*Wadsworth* v. *Wadsworth,* 12 N. Y. 376.) But the statute of wills, by necessary construction, prohibited an alien devisee, not authorized by statute to hold lands, from taking under a devise. He could neither take nor hold. By the express terms of the section, lands devised to an alien, not authorized by statute to hold lands, descend to the heirs of the testator competent to take, or to his residuary devisees.

The statute of wills changed the common law in two particulars ; *first,* it deprived an alien devisee of the right which he had by the common law to take by devise, unless he was authorized by statute to hold the lands devised ; and *second,* it modified the rule that the State might recover lands devised to an alien, and hold them as against all the world, and ˙made such lands, when the devise could not take effect by reason of alienage, descendible to the heirs of the testator, if there were any competent to take, and if there were none, then they are to pass to the residuary devisees named in the will. This statute was not passed primarily in furtherance of a restrictive policy on the part of the legislature in respect to aliens. Such a conclusion would be opposed to the legislative policy of the State, as indicated by the course of legislation which has steadily tended in the direction of removing the disabilities of alienage, and freeing aliens from the incapacities to which the common law subjected them. The primary purpose of the statute was to prevent the disinheritance of heirs by the application of the rule

that a devise to an alien, though good as to heirs of the devisor, was voidable by the State, which could recover the lands devised and hold them as an escheat. (Revisers' Note, 5th ed. Stat. 624; see, also, *Moers* v. *White*, 6 Johns. Ch. 336.)

The Revised Statutes (1 R. S. 720, §§ 15 and 16) authorized a resident alien who had made and filed the deposition specified therein, to take and hold lands under certain restrictions. This was the only statutory authority upon the subject, and the benefit of the statute was, by its obvious construction, limited to such aliens as, at the time of the grant or devise, had made and filed the deposition specified. (*Wright* v. *Saddler, supra.*) The devise to the children of Sarrissa Spalding is not, therefore, aided by the provisions of the Revised Statutes last referred to. They were aliens at the death of the testator, and had not made or filed the deposition specified. They were not of the class of aliens authorized by the Revised Statutes to hold lands, and unless the fourth section of the statute of wills has been changed or modified by subsequent legislation so as to take the devise in question out of its operation, the devise in question is void.

The legislature, by the act chapter 115 of the Laws of 1845, greatly enlarged and extended the rights of aliens in respect to the taking and holding of lands. The act is entitled " An act to enable resident aliens to hold and convey real estate, and for other purposes." The first section of the act provides that " any resident alien of this State who has heretofore purchased and taken, or may hereafter purchase and take a conveyance of any lands or real estate within this State, or to whom any lands or real estate has been, or may hereafter be devised, before making and filing in the office of the Secretary of State the deposition, or affirmation in writing, specified in the fifteenth section of the first title, in the first chapter of the second part of the Revised Statutes, may, on making and filing such deposition or affirmation, hold the real estate granted, conveyed or devised to such alien, in the same manner and with the like effect as if such alien, at the time of such grant, conveyance or devise, were a citizen of the United States." This section

does not, in terms, repeal or modify the fourth section of the statute of wills. But it is plain that the provision that a resident alien devisee may, on making and filing the deposition specified, hold the lands devised, in the same manner and with like effect as if, at the time of the devise, he was a citizen, necessarily makes the devise effectual to vest in the devisee an inchoate title as against the State. To this extent at least the section modifies the statute of wills. A devise to an alien, good as against the State, cannot be void.

But the change wrought by the first section of the act of 1845 is much more extensive and radical. The section relates exclusively to conveyances and devises to resident aliens. It leaves the statute of wills to operate upon devises to non-resident aliens, and such devises since, as before the act of 1845, are void. But it was, we think, the intention of the legislature by this section, to restore, as to resident aliens, the rule of the common law, which permitted aliens to take by devise, and in addition to enable them to hold the lands devised even as against the State, on making and filing the deposition specified. The section does not expressly authorize the alien devisee to take the lands devised, but the authority to hold implies an authority to take, and the provision that the devisee may hold the real estate devised "in the same manner as if such alien, at the time of such devise, were a citizen" assumes a previous taking by the devisee under the devise, of the lands which he is authorized to hold. The section expressly authorizes a resident alien to take a conveyance of lands, and there seems to be no public policy which would justify the inference that the legislature intended to discriminate between a title by deed and by devise. The other sections of the act of 1845 confirm the construction we have given to the first section. The fourth section enables the heirs of an alien resident, whether such heirs are aliens or citizens, to take by descent the lands conveyed to the alien ancestor, thereby changing the rule of the common law, that an alien could neither take lands by inheritance, nor transmit them by descent (2 Black. Com. 249); but the section provides that such heirs if aliens, and males of

full age, cannot hold the lands descended, as against the State, unless they make and file the deposition mentioned in the first section of the act. The fifth section enables the grantee or devisee of an alien resident who has died, or shall die, after having granted or devised lands acquired by him by purchase and conveyance, to take and hold the lands so granted or devised, whether such grantee or devisee be a citizen or alien, with the same proviso as in the fourth section, as to holding against the State. The testator in this case was a naturalized citizen. But if he had been an alien resident, and had died intestate leaving alien heirs, they would have been entitled by force of the fourth section of the act of 1845 to take the lands in controversy by descent. (*Goodrich* v. *Russell*, 42 N. Y. 177; *Luhrs* v. *Eimer*, 80 id. 171.) So also, if at the time of his death, he had been an alien resident, and not a citizen, the devise to the children of Sarrissa Spalding would have been valid under the fifth section of the act. Their alienage in the case supposed would have been no impediment to their taking the devise, and their title would become perfect on complying with the condition specified in the section. A construction of the first section of the act of 1845, for which the plaintiffs contend, imputes to the legislature the design to validate devises of citizens to aliens only to the extent of enabling the devisees to hold the lands devised, against the State, and at the same time to confer upon alien residents the unconditional power of testamentary disposition of their estates to aliens or citizens. Such a discrimination manifestly could not have been intended, and is not required by the language of the act. We are of the opinion that an alien devisee of a citizen takes by virtue of the first section, upon acceptance of the devise, a conditional title absolute as against the heirs of the testator, but defeasible by the State, until he makes and files the deposition prescribed in the Revised Statutes. He cannot hold against the State unless he makes and files his deposition. Under sections 10 and 11 he may do this at any time, before the State recovers the lands, upon paying the costs of any proceedings for escheat which may have been instituted.

In *Downing* v. *Marshall* (23 N. Y. 366), no question arose under the act of 1845. The court held that the devise contained in the will, then under consideration, to the children of the testator's brother Jeremiah, was void by reason of the alienage of the devisees. They were not residents or inhabitants of the United States, and were not, therefore, within the purview of the act of 1845. This fact appeared by the record, although it is not stated in the report of the case.

We have assumed thus far that the act of 1845 applies to aliens who become residents of this State subsequent to its passage. The only doubt upon this point arises upon the language " any alien resident of this State who has *heretofore* purchased and taken, or *may hereafter* purchase and take," etc. It was one purpose of the act to legitimate purchases by, and devises to, resident aliens, made before the act was passed, saving the vested rights of third persons. (§ 11.) For this reason it was necessary to make the language of the act retrospective. But we think the act was intended in addition to embody the permanent policy of the State, in respect to the acquisition and holding of real property by resident aliens. The legislature had been frequently called upon to relieve resident aliens from the disabilities to which they were subject, and numerous special and limited acts had been passed for this purpose. A general act regulating and defining the rights of resident aliens, in respect to real property in this State, would avoid the necessity of special legislation, and it was important that the legislature should enact a general rule governing the property rights of alien residents, for the protection of the large class of persons of foreign birth who were annually becoming residents of the State. In view of the comprehensive language of the act, and the absence of words of limitation such as are found in the act of 1843, we are of opinion that it applies to alien residents as a class, and includes in its prospective provisions, aliens who should thereafter become residents of the State.

The act chapter 576 of the Laws of 1857 does not justify the claim that the act of 1845 was retrospective only. It was probably passed to meet a case not covered by the act of 1845.

It is entitled "An act to extend," etc., the act of 1845, but does not purport to annul or repeal the prior act. The ninth section of the act of 1845 confirms grants theretofore made by an alien, to a citizen or resident alien, and also grants which might thereafter be made by a resident alien.

It will be observed that this section confirms grants made *before* the passage of the act of 1845, by an alien, whether resident or not, but only such *future* grants as should be made by resident aliens. The act of 1857 would apply to the case of a grant made by a non-resident alien intermediate the passing of the act of 1845, and the act of 1857, which would not be protected by the act of 1845 without its re-enactment. The act of 1857 is obscure, but we are of opinion that its provisions do not apply to grants or devises, which were authorized or confirmed by the act of 1845, without the aid of the act of 1857.

We concur with the General Term that under the circumstances of this case, there was no error in the practice of the trial judge in setting aside the verdict, and directing final judgment for the defendants. The case presented a question of law upon uncontroverted facts, and the verdict directed was formal merely, and no objection was made to the course pursued by the court.

The judgment of the General Term should be affirmed.

All concur; MILLER, J., concurring in result.

Judgment affirmed.