ANNE McCORMACK, Respondent, *v.* CHARLES E. CODDINGTON et al., Respondents, and THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

1. ESCHEAT — FAILURE TO FILE DECLARATION OF CITIZENSHIP BY ALIEN HEIR. Under section 4 of chapter 115 of the Laws of 1845 (amd. L. 1874, ch. 261; L. 1875, ch. 38) an alien inheriting real estate from a citizen could hold it as against the state only by making and filing a deposition or affirmation of his intention to become a citizen, as required by the first section of the act. A failure to file such declaration rendered his title liable to forfeiture during life by the state in proceedings to be taken for that purpose; upon his death without having filed such declaration, the fact that the state failed in his lifetime to take such proceedings did not constitute a waiver or loss of its rights and permit him to transmit his title by inheritance to a citizen heir; but his death *ipso facto* worked an immediate escheat to the state, no proceedings on its part having been necessary to effect it, and, therefore, in the absence of any legislation authorizing it, the title of such heir cannot be successfully maintained

as against the state, in a subsequent partition action in which it asserts its rights.

2. Insufficiency of Statutes Relied upon as Waiving Right of Escheat — L. 1877, Ch. 111; L. 1893, Ch. 207; 1 R. S. 754, § 22. Subsequent legislation claimed to have waived such defect in title or to have perfected title in such heir, cannot be so regarded: 1. Chapter 111 of the Laws of 1877 assumes to relieve from question or impeachment a right, title or interest which has been " acquired " by a citizen — the title in this case having reverted to the state, nothing was acquired by the heir. 2. Chapter 207 of the Laws of 1893, passed after the death of such alien, while broad enough in its language to justify the contention, relates to cases arising after its passage, and not to that of an alien dying before it took effect; if given a retroactive effect it would be unconstitutional, not purporting to have been passed by the two-thirds vote necessary to divest the state of its title. (Const. art. 3, § 20.) 3. The Revised Statutes (1 R. S. 754, § 22), providing that no person capable of inheriting shall be precluded therefrom by reason of the alienism of any ancestor, would cure the trouble arising from the alienism of an intermediate link in the chain of pedigree if the alien in question had been otherwise capable of transmitting title.

3. Statutes of Descent Require Ancestor to Be Possessed of Some Inheritable Title. The fact that the Statutes of Descent expressly qualified and entitled the heir to inherit from such alien is immaterial for the reason that there was no interest to inherit. Those statutes require not only a person capable of inheriting, but also an ancestor possessed of some title which is the subject of transmission at the time of his death.

*McCormack* v. *Coddington,* 109 App. Div. 741, reversed.

(Argued March 1, 1906; decided April 17, 1906.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 29, 1905, which modified and affirmed as modified an interlocutory judgment of Special Term directing a partition and sale of real property.

The following questions were certified : " *First.* Margaret Clifford, a naturalized citizen or a resident alien, on April 12th, 1873, acquired the real property in suit by purchase. She died on June 21st, 1882, and upon her death one-fifth of the said real property, under Laws of 1845, Chapter 115, as amended by Laws of 1875, Chapter 38, devolved by descent upon her brother, Patrick Casey, a non-resdent alien, of full

age, subject to the life estate of Mary Casey, the mother of said Margaret Clifford. The said Patrick Casey, on May 30th, 1883, died intestate, a non-resident alien, prior to the termination of the life estate of his mother, Mary Casey, and without having made or filed in the office of the Secretary of State the deposition or affirmation referred to in the first section of the Laws of 1845, Chapter 115, leaving as his heir at law Maria Rooney, a citizen of the United States. Did the estate or interest of said Patrick Casey in one-fifth of said real property pass by descent to Maria Rooney, a sister, his only heir at law, who was a citizen of the United States?

"*Second.* If the first question be answered in the negative then did the said undivided one-fifth interest in said land of which the said Patrick Casey was seized, instantly upon his death, escheat to the state without a judgment of forfeiture or other legal proceeding?"

The facts, so far as material, are stated in the opinion.

*Edward M. Bassett* and *W. W. Thompson* for appellant. By the common-law rule in this state no alien could even take land by inheritance, although he could take and hold it (against all save the state) by purchase, nor could he transmit land by descent to either his citizen or alien natural heirs. (Const. of 1846, art. 1, § 11; *Goodrich* v. *Russell*, 42 N. Y. 177; *Larreau* v. *Davignon*, 5 Abb. Pr. [N. S.] 370; *Jackson* v. *Adams*, 7 Wend. 367; *Mooers* v. *White*, 6 Johns. Ch. 360; *People* v. *Irwin*, 21 Wend. 128; 2 Am. & Eng. Ency. of Law [2d ed.], 70.) Section 4 of chapter 115, Laws of 1845, as amended by chapter 38, Laws of 1875, did not remove the common-law prohibition denying an adult alien male the right to transmit land by descent to either his citizen or alien heirs unless such alien first filed the required statutory affirmation of intended citizenship. (*Dean* v. *M. E. R. Co.*, 119 N. Y. 540; 26 Am. & Eng. Ency. of Law [2d ed.], 662; 1 R. S. 719, 720, §§ 1, 18; *Renner* v. *Muller*, 12 J. & S. 544; *Stewart* v. *Russell*, 91 App. Div. 310; *Callahan* v. *O'Brien*, 72 Hun, 216.) Although the statute

in question gave to Patrick Casey inheritable blood for the purpose of taking and holding by inheritance an interest in the premises in question, it did not give him inheritable blood, of which he was deprived by the common law, for the purpose of transmitting the same by descent unless he filed the statutory affirmation. (1 R. S. 719, 720, §§ 1, 18; *Croner* v. *Cowdrey,* 139 N. Y. 471.) The title to Patrick Casey's vested remainder in an undivided one-fifth of the premises passed at his death to the state by escheat, but possession thereof was deferred until the death of Mary Casey, the life tenant, on June 23, 1899. Since then the state has been and now is in possession of the premises with the other tenants in common. (*Thompson* v. *Simpson,* 128 N. Y. 270; *Barber* v. *Brundage,* 169 N. Y. 368; *Culver* v. *Rhodes,* 87 N. Y. 348; *Luhrs* v. *Eimer,* 80 N. Y. 171; *Wainright* v. *Low,* 132 N. Y. 313; *Blight* v. *Rochester,* 7 Wheat. 535; *State* v. *Olin,* 23 Wis. 309; *Hauenstein* v. *Lynham,* 100 U. S. 483.) Chapter 207 of the Laws of 1893 does not by its terms have a retrospective effect. And on well-settled principles of statutory construction said statute can only refer to a descent cast subsequent to its passage. (*N. Y. & O. M. R. R. Co.* v. *Van Horn,* 57 N. Y. 473; *G. S. Bank* v. *Suspension Bridge,* 159 N. Y. 369; *Stewart* v. *Russell,* 91 App. Div. 310; *Jackson* v. *Fitzsimmons,* 10 Wend. 13; *Wainwright* v. *Low,* 132 N. Y. 317; *Luhrs* v. *Eimer,* 80 N. Y. 171; *People ex rel. Purdy* v. *Comrs. of Highways,* 54 N. Y. 276; *Supervisors* v. *Brogden,* 112 U. S. 268; *Matter of N. Y. & L. I. B. Co.,* 148 N. Y. 551.)

*John C. Thomson* for respondents. Under the statutes of this state, Maria Rooney, a citizen of the United States, inherited on the death of Patrick Casey the one-fifth interest in the premises in suit which, under the Laws of 1845, chapter 115, section 4, as amended by Laws of 1875, chapter 38, devolved upon him on the death of Margaret Clifford. (*Callahan* v. *O'Brien,* 72 Hun, 216; *Stewart* v. *Russell,* 91 App. Div. 310; *Luhrs* v. *Eimer,* 80 N. Y. 171; *Leary* v.

*Leary*, 50 How. Pr. 122; *Parish* v. *Ward*, 28 Barb. 328; *Jackson* v. *Jackson*, 7 Johns. 214; *Orser* v. *Houg*, 3 Hill, 79; *Maynard* v. *Maynard*, 36 Hun, 227; *Hall* v. *Hall*, 81 N. Y. 130; *Stamm* v. *Bostwick*, 122 N. Y. 48; *Croner* v. *Cowdrey*, 139 N. Y. 471.) The provisions of the Laws of 1877, chapter 111, operate as a waiver by the state of any rights founded on the lack of capacity of an alien to transmit title to an heir who is a citizen of this state. (*Kohl* v. *U. S.*, 91 U. S. 367; *Matter of Gill*, 79 Iowa, 296; *Leflore Co.* v. *Allen*, 80 Miss. 298; *Luhrs* v. *Eimer*, 80 N. Y. 177; *Hall* v. *Hall*, 81 N. Y. 130; *Wainwright* v. *Low*, 132 N. Y. 313; *McGillis* v. *McGillis*, 154 N. Y. 532.) Under the provisions of the Revised Statutes, Maria Rooney was not precluded from inheriting by reason of the alienage of Patrick Casey. (*McCarthy* v. *Marsh*, 5 N. Y. 263; *Wheeler* v. *Clutterbuck*, 52 N. Y. 67.) Chapter 115 of the Laws of 1845, section 4, as amended by Laws of 1875, chapter 38, under the settled policy of construction of grants or conveyances, operated to vest in Patrick Casey an estate of inheritance, with capacity to transmit to such heirs as have capacity to inherit. (1 R. S. 722, §§ 1, 2.)

Hiscock, J. This is an action of partition, and the question arising between the People and the respondents here presented is whether a certain interest in real estate which had been taken by an alien heir, upon his death passed by descent to his sister, being a citizen of the state, as his heir, and thence by conveyance from her and others to the Coddingtons, or whether such interest escheated to the state. The trial court adopted the latter view; the Appellate Division by a divided vote the former one. We agree with the trial court, and think the judgment appealed from should be reversed in so far as it modifies that of the trial court.

The facts which raise this issue are as follows:

In April, 1873, Margaret Clifford, being a citizen or resident alien (and it is immaterial for the purposes of this inquiry which), purchased the entire premises involved in

this action, and died seized thereof June 21, 1882. It is conceded that by chapter 115 of the Laws of 1845, as amended, and to which more extended reference will be made hereafter, some right, title or interest to one-fifth of this property upon her death subject to a life estate of her mother descended to her brother, Patrick Casey, who was at all times a non-resident alien and who, although of full age, never filed any declaration of an intention to become a citizen, as required by the statute. The mother died June 2, 1899, and the brother died intestate May 30, 1883, without ever having attempted to make any conveyance of his interest, which is the one here involved. Of the brother and three sisters whom he left him surviving, only one, Maria Rooney, was a citizen of the state of New York. She claimed to inherit his interest and to make conveyance thereof to the defendants Coddington or intermediate grantors.

The quality and nature of the estate which Patrick Casey inherited from his sister and the decision of the question whether he did transmit an estate by inheritance to his citizen sister, is dependent, as I think, entirely upon section 4 of chapter 115 of the Laws of 1845, as amended by chapter 261, Laws of 1874, and chapter 38, Laws of 1875, and which reads as follows :

" Section 4. If any alien resident of this State, or any naturalized or native citizen of the United States, who has purchased and taken, or hereafter shall purchase and take, a conveyance of real estate within this State has died, or shall hereafter die, leaving persons who, according to the statutes of this State, would answer the description of heirs of such deceased person,   *   *   *   and being of his blood, such persons so answering the description of heirs,   *   *   *   whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold, as heirs,   *   *   *   as if they were citizens of the United States the lands and real estate owned and held by such deceased alien or citizen at the time of his decease. But if any of the persons so answering the description of heirs,   *   *   *   as

aforesaid, of such deceased person, are males of full age, they shall not hold the real estate hereby made descendible or devisable to them as against the state unless they are citizens of the United States, or in case they are aliens, unless they make and file in the office of the Secretary of State the deposition or affirmation mentioned in the first section of this act."

It is claimed by respondents that other statutes subsequently passed cured the defects, if any, under the one just referred to, and made a perfect and secure chain of title to them. I do not agree with this contention, which will be considered more at length hereafter.

There is no question that Casey took a title which was complete and perfect as against everybody but the state. That, however, is now present asserting its rights.

Respondents at times seem to make an argument in reference to the broad, general character of his title as including the right of transmission by inheritance, which can only be predicated upon the first part of the statute construed by itself. But, of course, we must interpret the enactment as a whole, and especially must determine what is the effect upon the first general provision that he might take and hold the title, of the later provision that he could not hold unless he did certain things.

There is no question that the state by proper proceedings during his lifetime might have procured a forfeiture of Casey's title by reason of his default, if persisted in. But respondents' counsel argues that such proceedings were essential to effect an escheat, and that failing in them the state forever lost its rights and the title passed by death to the heir. And it does seem that if his heir took a title which was merely defeasible and subject to escheat in proceedings thereafter to be instituted for that purpose, this defect would be cured and the title made perfect in this respect by the provisions of chapter 111, Laws of 1877, hereafter quoted and referred to.

I shall, therefore, assume that the precise, narrow query is whether Casey's failure to file his declaration upon his death

*ipso facto* worked an· immediate escheat to the state, or
whether the omission of the state to take advantage of this
failure by proceedings during his life worked a waiver or
loss of its rights and permitted him to transmit his title by
inheritance. The possibility of compliance with the statute
which required Casey to do something as a condition of hold-
ing the real estate ceased with his death. The state had
omitted to take advantage of his default by proper proceed-
ings during his life. Where did these several omissions leave
the rights of the parties ?

·I am not able to reach the conclusion that Casey's death
was an excuse for non-compliance or a substitute for compliance
with the statute, or that he could transmit by inheritance to
another that which under the circumstances he was forbidden
to hold himself, or that upon the undisputed facts of his
default it was necessary to institute proceedings to effect an
escheat· to the state of a title which could not go elsewhere
without violating the requirements of the statute.

At common law ·Casey had no right to take or hold the
title. The statute, construed as an entirety, said he might
take it from the ancestor, but that he could not hold it unless
he filed his declaration. The effect of this was to modify the
common law which forbade his holding, only in case he com-
plied with certain conditions. If he did not comply with
those conditions he did not escape from the rule of the com-
mon law. The exaction was a proper one.· The state was
conferring new privileges upon aliens, and it had a perfect
and equitable right to demand as the price thereof that they
should assume certain duties and responsibilities for its bene-
fit. (*Marx* v. *McGlynn*, 88 N. Y. 357, 376.)

And it is very insistent in demanding this assumption upon
their part. Again and again in the different sections of the
act under review, we find the grant of new rights to aliens
followed by the insertion of this corresponding requirement
for a· declaration by them.

Casey died without fulfilling the condition imposed upon
him. He had failed to do the thing that was necessary to

abrogate the rule of the common law and allow him to hold the title. At the moment of death he had no right to hold the title and had no right to pass it on to another. The title could not remain floating around in abeyance. Under the statute it should not be allowed to pass to the heir and, therefore, of necessity it reverted at once and without proceedings to the state.

This view seems to be sustained by those decisions which deal with the question of escheats under the common law Under the latter an alien might acquire land by purchase and obtain a title good as against all but the state. During the life of the alien purchaser, the People could not enter without judicial proceedings. His entry and possession and holding were lawful and could be terminated only by regular legal proceedings for the purpose of ascertaining whether he was an alien or not. But when he died the title instantly and of necessity without any inquest of facts escheated and vested in the state because the freehold could not be kept in abeyance and because he was incompetent to transmit by hereditary descent. In other words, the necessity which existed during the life for legal proceedings by which to judicially determine the alienage of the holder and the right of escheat by the state ceased upon death and the title reverted upon the facts as they actually existed without any judicial determination of them. (*Goodrich* v. *Russell*, 42 N. Y. 177, 181; *Jackson* v. *Adams*, 7 Wend. 368; *Ettenheimer* v. *Heffernan*, 66 Barb. 374; *Mooers* v. *White*, 6 Johns. Ch. 360; *Hall* v. *Hall*, 81 N. Y. 130; *Larreau* v. *Davignon*, 5 Abb. Pr. [N. S.] 367.)

It is urged that the rule which applied in the case of real estate held by an alien under the common law should not be applied to the present case; that the policy of the law as evidenced by various statutes has become much more liberal towards aliens holding real estate. The answer to this is that the law has become more liberal in so far as the statutes have made it so, but I know of no principle or decision which authorizes us to hold differently than above indicated unless some statute permits it, and I find none such.

It is, however, contended that various statutes have been adopted which waived the right of escheat in the case before us, or operated to perfect title in the citizen sister of Patrick Casey.

The first one of these called to our attention is chapter 111 of the Laws of 1877, already mentioned, which provides that " The right, title or interest of any citizen or citizens of this state in or to any lands within this state now held or hereafter acquired shall not be questioned or impeached by the reason of the alienage of any person or persons from or through whom such title may have been derived," &c.

This statute does not seem to cover this case or perfect in the respondents a title to the land in question. It assumes to relieve from question and impeachment a right, title or interest which has been " acquired." This might apply to a case where an alien had made an attempted conveyance of lands, but if the reasoning is correct that coincidentally with the death of Patrick Casey all right, title and interest by escheat reverted to the state and did not pass to his heirs, then nothing was " acquired " by the latter upon which this statute might operate. The language is not appropriate to perfect or relieve from defect a title which might have been acquired except for its passing elsewhere.

It is also claimed that chapter 207 of the Laws of 1893, although adopted long after Patrick Casey's death, operated as a waiver by the state of any right or claim to the premises in question by escheat and thus perfected the title in the respondents. Said statute provides that " any person who would· otherwise answer to the description of heir or devisee of a person, who, at the time of his death, was a citizen of the United States, shall be entitled to inherit or take from said citizen, and hold, enjoy, convey, transmit and devise any interest in real property situated in this state, in the same manner and to the same extent and with the same effect as if he was himself a citizen of the United States, notwithstanding the fact that he be a non-resident alien ; and the fact that any person otherwise qualified to take, hold, enjoy, convey,

transmit and devise any interest in real property situated in this state, is a non-resident alien, shall not prevent his taking, holding, enjoying, conveying, transmitting and devising such interest, providing his title, or that of some person under whom he claims, shall be derived, by descent or devise, from some person who was, at the time of his death, a citizen of the United States."

There is no doubt that the language here employed is broad enough to encompass the purpose claimed by respondents if it is effectively retroactive. I do not think, however, that it is so. A construction of the language used, in its ordinary and natural meaning, makes it relate to cases arising after and not before the passage of the statute. If it is retrospective and relates back to 1883 when Patrick Casey died, then, of course, it also reaches to the very creation of the state. We are not readily to assume that it was the intention of the legislature to pass an act which would thus affect titles to property throughout the state.

The fact that at the same session of the legislature at which this act was adopted and after its passage at least four other acts were passed releasing the rights of the state in escheated lands and which would have been unnecessary if the act under consideration was subject to the construction claimed by respondents, is a very practical argument that the legislature did not intend any such consequences.

The learned Appellate Division seems to have adopted the view that it was retroactive, but the same court, with the concurrence of the learned justice now writing the prevailing opinion, in *Stewart* v. *Russell* (91 App. Div. 313) held that it had no retroactive effect and might not be invoked in determining the status of a party claiming to inherit real property from an ancestor dying before the passage of the act.

Further than this, if, as claimed by respondents, said act in its terms was retroactive and did apply to the case before us, it would be unconstitutional, and, therefore, ineffectual to accomplish the result claimed for it.

Upon respondents' theory upon this point, the state, having

acquired by forfeiture the title to real estate prior to 1893, passed this statute whereby, in effect, it divested itself of such title and granted and conveyed it without consideration to an individual. I see no room for doubt that such an act comes within the provisions of the Constitution (Art. 3, sec. 20), in force at the time when said act was passed, providing that "the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes." It does not need amplification of argument to demonstrate that the property which had been acquired by the state was public property and that the purpose claimed for the act, in this instance, was of a private and individual character.

The bill does not purport to have been passed by the requisite constitutional vote, and, therefore, if otherwise complying with respondents' contention, would be invalid on this account.

While such authority seems unnecessary, it is of interest as indicating the practical interpretation placed by the legislature upon the constitutional necessity for the assent of two-thirds of its members in each branch to a bill releasing escheated lands acquired by the state to an individual, that an examination of a large number of bills passed to cover individual cases discloses that, with a single exception, all were adopted by such a vote, and chapter 261 of the Laws of 1874, chapter 38 of the Laws of 1875, and chapter 111 of the Laws of 1877, which have been especially referred to upon this subject as retroactive in terms or effect, were each adopted by such a vote.

Lastly, it is urged that the Statutes of Descent expressly qualified and entitled the citizen sister to inherit these lands from her alien brother. The trouble with this claim is the same as that before suggested in connection with another one. The Statutes of Descent undoubtedly did designate and qualify the sister as the person to inherit Patrick Casey's interest, but provided always that there was some interest to inherit. If

the reasoning has been correct that he lost the right to hold the title which he had taken provisionally and that the same at the instant of his death was forfeited and escheated to the state, then, of course, there was nothing which could pass to or be inherited by his sister under the statutes referred to. They require not only a person capable of inheriting but also an ancestor possessed of some title which is the subject of transmission at the moment of his death.   This latter requirement was lacking.

Nor do I think that respondents are aided by the provision of the statute that " No person capable of inheriting under the provisions of this chapter shall be precluded from such inheritance by reason of the alienism of any ancestor of such person." That statute would cure the trouble arising from the alienism of an intermediate link in the chain of pedigree, if Patrick Casey had been otherwise capable of transmitting title. (*McLean* v. *Swanton*, 13 N. Y. 535.)

In accordance with these views the first question certified to us should be answered in the negative and the second one in the affirmative, and the order of the Appellate Division, in so far as it modified the interlocutory judgment entered at Special Term, should be reversed and said judgment of the Special Term be affirmed, with costs to the appellant in all the courts.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Judgment accordingly.