Annie C. Haley, Plaintiff, *v.* Annie Sheridan et al., Defendants, Margaret Kerr et al., Respondents, and The People of the State of New York, Appellant.

1. Real Property — Rights of Citizens of the Kingdom of Great Britain and Ireland to Take, Hold and Convey Lands or Real Estate within This State — Effect of Chapter 593 of Laws of 1897. Under the statute (L. 1897, ch. 593) which provides that "Any citizen of a state or nation which, by its laws, confers similar privileges on citizens of the United States, may take, acquire, hold and convey lands or real estate within this state, in the same manner and with like effect as if such person were, at the time, a citizen of the United States; provided, however, that nothing in this act contained shall affect the rights of this state in any case in which proceedings for escheat have been or may be instituted before the passage of this act," a citizen of the Kingdom of Great Britain and Ireland, which has conferred similar privileges on citizens of the United States, by the Naturalization Act (33, 34 Vic. ch. 14; May 12, 1870), may take, acquire, hold and convey lands or real estate within this state, in the same manner and with like

effect as if said person were a citizen of the United States; and where a citizen of the United States residing within this state, died, intestate, in November, 1903, seized in fee of real estate within the state, and leaving as her heirs an aunt and the children of a deceased uncle, all residing in the United States, and an uncle who was a non-resident alien and a citizen and subject of Great Britain, residing in Ireland, such uncle, upon the death of said intestate, became seized in fee of an undivided one-third interest in said real estate, subject to a mortgage thereon and to the payment of the transfer tax thereon, and upon his death in 1904, his widow, who resided in Ireland, became entitled to a dower interest therein, and his daughter, who became a citizen of the United States by the naturalization of her husband in 1903, became entitled to the fee thereof subject to the dower interest of her mother.

2. COSTS — WHEN COURT OF APPEALS WILL NOT INTERFERE WITH JUDGMENT IN ACTION OF PARTITION AWARDING COSTS AGAINST PEOPLE OF THE STATE AS DEFENDANTS THEREIN. The People of the State of New York having been made a party defendant, under the statute (Code Civ. Pro. § 1594), in an action brought by one of the heirs of said intestate, who resides within this state, for a partition of said real property, and the Supreme Court having in its discretion, under the statute (Code Civ. Pro. § 1579), rendered judgment against the People of the state for the costs and expenses of the action, the Court of Appeals will not interfere with the discretion exercised in such case.

*Haley* v. *Sheridan,* 114 App. Div. 903, affirmed.

(Submitted December 3, 1907; decided December 20, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered September 6, 1906, which affirmed a final judgment of the court at Special Term in an action of partition.

On the 5th day of November, 1903, Mary McArdle, a citizen of the United States, died intestate a resident of the city of New York seized in fee of a certain piece or parcel of real property known as 220 Spring street in said city. She did not leave her surviving a descendant, father, mother, brother, sister, or the descendant of a deceased brother or sister. Her only heirs at law were Annie Sheridan, an aunt, James Tully, an uncle, Matthew Tully, Maria Tully and Annie C. Haley, the children of Matthew Tully, a deceased uncle. Said James Tully was a non-resident alien and a citizen and subject of Great Britain, residing in Ireland. He was never within

the United States and never made or filed the depositions required by sections 4 and 5 of the Real Property Law. Said James Tully died intestate in Ireland on March 5, 1904, leaving him surviving his widow, Mary Tully, and one child, a daughter, Margaret Kerr. Said Mary Tully, the widow of James Tully, is a non-resident alien and a citizen and subject of Great Britain, residing in Ireland, and she has never made or filed the depositions required by sections 4 and 5 of the Real Property Law. Said Margaret Kerr became a citizen of the United States by the naturalization of her husband December 11, 1903.

This action was commenced by the said Annie C. Haley to partition said real property. Answers were interposed on the part of the defendants including the defendant The People of the State of New York, and the issues were tried at a Special Term. An interlocutory judgment was entered in which it was decreed that "The defendants Margaret Kerr and Bernard Kerr, her husband, and Mary Tully, widow of James Tully, have not nor has any of them any right, title, share or interest of any nature or character" in said real property. And it was further adjudged that "Subject to said mortgage (a mortgage on the real property) and to the payment of the transfer tax upon the estate of the said Mary McArdle, deceased, the defendant The People of the State of New York are seized in fee of an undivided one-third interest in said premises."

An appeal was taken from said interlocutory judgment by the said Margaret Kerr and Mary Tully and the Appellate Division modified said interlocutory judgment by striking therefrom the provisions hereinbefore quoted and inserting in the place thereof provisions as follows: "Subject to said mortgage and the payment of the transfer tax upon the estate of the said Mary McArdle, deceased, and the dower of Mary Tully, widow of James Tully, deceased, the said defendant Margaret Kerr is seized in fee of an undivided one-third interest in said premises and subject to said mortgage and said transfer tax the said defendant Mary Tully, widow of James Tully, deceased, has a life interest in an undivided one third of

the said one-third interest in said premises of which the said James Tully died seized." " That the defendants The People of the State of New York have not any right, title, share or interest of any nature or character in the premises hereinbefore described except the rights and interests of the said People of the State of New York in respect to the transfer tax upon the estate of said Mary McArdle, deceased."

A final judgment was entered upon said interlocutory judgment and after the modifications of said interlocutory judgment as stated the final judgment was modified accordingly. An appeal was taken from said modified final judgment to the Appellate Division of the Supreme Court where the same was in all respects affirmed. This appeal is taken by the People of the State of New York from the judgment of the Appellate Division affirming said modified final judgment, and in the notice of appeal it is stated that the appellant intends to bring up for review the interlocutory judgment as modified by the Appellate Division of the Supreme Court.

*William S. Jackson, Attorney-General* (*James A. Donnelly* and *Lewis O. O'Brien* of counsel), for appellant. The statutes at present in force in New York have changed the common law in so far as to permit an alien, under certain circumstances, to take, hold and convey real property, but there is no statute which is now or was, at the time of the death of James Tully, in force, which confers upon an alien who has not filed the deposition required by sections 4 and 5 of the Real Property Law capacity to transmit real property by hereditary descent, and there is no statute now in force which gives to the wife of such alien a right of dower. (*Heney* v. *B. B. Society*, 39 N. Y. 333; *McCormack* v. *Coddington*, 184 N. Y. 467.) It was error for the Appellate Division to grant costs against the People of the State of New York upon the appeals from the interlocutory judgment and from the modified final judgment herein. (Code Civ. Pro. § 1594; *U. S.* v. *Verdier*, 164 U. S. 213; *Marine* v. *Lyon*, 62 Fed. Rep. 153.)

*Henry Melville* and *John J. Clancy* for respondents. James Tully had a perfect title under chapter 593 of the Laws of 1897, which on his death passed to his citizen heir by virtue of said statute, read in connection with chapter 547 of the Laws of 1896. (*Kelly* v. *Pratt*, 41 Misc. Rep. 31; *McCormack* v. *Coddington*, 184 N. Y. 467; *Parish* v. *Ward*, 28 Barb. 330; *Foy* v. *Taylor*, 31 Misc. Rep. 32.) In an action for a partition the People of the State stand, as to costs, on an exact equality with other parties and in a proper case can be required to pay costs to another party. (Code Civ. Pro. § 1579.)

CHASE, J.   When the Real Property Law (Laws of 1896, Chapter 547) was enacted all prior statutes in any way relating to aliens taking, holding, conveying and transmitting real property were repealed.   At that time the disabilities of aliens relating to real property claimed through descent or devise from some person who was at the time of his death a citizen of the United States had for about three years been wholly removed by chapter 207 of the Laws of 1893 as therein stated.   That act provided as follows:

" Any person who would otherwise answer to the description of heir or devisee of a person, who, at the time of his death, was a citizen of the United States, shall be entitled to inherit or take from said citizen, and hold, enjoy, convey, transmit and devise any interest in real property situated in this state, in the same manner and to the same extent and with the same effect as if he was himself a citizen of the United States, notwithstanding the fact that he be a non-resident alien; and the fact that any person otherwise qualified to take, hold, enjoy, convey, transmit and devise any interest in real property situated in this state, is a non-resident alien, shall not prevent his taking, holding, enjoying, conveying, transmitting and devising such interest, providing his title, or that of some person under whom he claims, shall be derived, by descent or devise, from some person who was, at the time of his death, a citizen of the United States."

The commissioners of statutory revision, in reporting the proposed Real Property Law in 1896, said : "If the revision becomes a law non-resident aliens, with the exception contained in section 6, and as their rights may be extended by treaties of the United States with foreign governments, will be unable to take and hold real property within the state. This, it is believed, affects no substantial change in the general policy of the state, which, until 1893, seems to have uniformly required residence and the filing of a deposition in order to entitle an alien to hold real property within the state."

The Real Property Law, as enacted in 1896, (Ch. 547,) provided : "A person other than a minor, an idiot, or person of unsound mind, seized of or entitled to an estate or interest in real property, may transfer such estate or interest." (Section 3.) "The real property of a person who dies without devising the same shall descend : 1. To his lineal descendants. 2. To his father. 3. To his mother ; and, 4. To his collateral relatives, as prescribed in the following sections of this article." (Section 281.)

The fourth section of said Real Property Law provides that a resident alien may make and file a written deposition stating his intention of becoming a citizen of the United States, and section 5 of said act provides that an alien may for a term of six years after filing such deposition take, hold, convey and devise real property. It further provides that if such alien be admitted to citizenship a grant, devise, contract or mortgage theretofore made to or by him is as valid and effectual as if made thereafter.

It further provides that if a devise is made to such alien it shall not be valid unless a deposition be filed by him or he be admitted to citizenship within one year after the death of the testator, or if the devisee is a minor, within one year after his majority. It further provides that if a person who has filed such a deposition dies within six years thereafter and before he is admitted to citizenship his widow is entitled to dower in his real property, and if he dies intestate his heirs or the persons who would otherwise answer the description of heirs

inherit his real property upon such persons being admitted to citizenship or filing a deposition in their own behalf within one year after such death or if minors within one year after their majority.

Section 6 of said Real Property Law provides that if a woman born a citizen of the United States marries an alien the foreign-born children and descendants of such woman shall, notwithstanding her or their residence or birth in a foreign country, be entitled to take, hold, convey and devise real property situated within this state in like manner and with like effect as if such woman and such foreign-born children and descendants were citizens of the United States.

After the enactment of the Real Property Law there was no statute on the subject of non-resident aliens holding real property in this state except said section of said act relating to the foreign-born descendants of a woman born a citizen of the United States and marrying an alien.

At the next session of the legislature this radical change from the practical removal of all disabilities under the act of 1893 was again changed by the enactment of chapter 593 of the Laws of 1897, which is as follows: " Any citizen of a state or nation which, by its laws, confers similar privileges on citizens of the United States, may take, acquire, hold and convey lands or real estate within this state, in the same manner and with like effect as if such person were, at the time, a citizen of the United States; provided, however, that nothing in this act contained shall affect the rights of this state in any case in which proceedings for escheat have been or may be instituted before the passage of this act."

By this act certain alien citizens may take, acquire, hold and convey lands or real estate within this state in the same manner and with the like effect as if such person were at the time a citizen of the United States. The privileges conferred by this act are matters of comity and in no way dependent upon the intention of the alien. The language of such act is more condensed than the act of 1893, but a title acquired pursuant to the privileges conferred by that act is uncondi-

22

tional. The act does not say that a citizen of such state or nation may hold real property in this country until " office found." The privileges conferred are without restriction or forfeiture. A citizen of such other state or nation may take, acquire, hold and convey lands or real estate within this state *in the same manner* and with like effect as if such person were at the time a citizen of the United States. Such a title could not have anything added to it if the alien acquiring it should subsequently become a citizen of this country. It is said in *Mooers* v. *White* (6 Johnson's Chancery, 360, 365) : " Though an alien can take by a purchase or devise which is taking by the act of the parties as contradistinguished from taking by operation of law and can hold until office found, yet the law will not enable him to transmit by hereditary descent."

An alien apart from the authority of some statute cannot transmit property by hereditary descent because he has no title which is the subject of transmission at the moment of death. (*McCormack* v. *Coddington*, 184 N. Y. 467.)

An alien holding real property pursuant to the privileges conferred by the act of 1897 does so independent of the power of the state to take it from him. He, like a citizen of this country, can acquire the absolute fee of the land. He holding his title in the same manner and with like effect as a citizen of the United States has a title which is the subject of transmission at the moment of death. He is put upon the same footing as a citizen and if he does not convey or devise his real property it is not forfeited and escheated, but passes to his heirs at law under our statutes. (*Habirshaw* v. *Isler* [memorandum decision], 189 N. Y. 552.)

It is provided by the Naturalization Act (33, 34 Vic. c. 14) (12 May, 1870) as follows : " Real and personal property of every description may be taken, acquired, held and disposed of by an alien in the same manner in all respects as by a natural-born British subject; and a title to real and personal property of every description may be derived through, from, or in succession to an alien in the same manner in all respects

as through, from, or in succession to a natural-born British subject."

As the kingdom of Great Britain and Ireland confers similar privileges on the citizens of the United States, James Tully in his lifetime and upon the death of his niece Mary McArdle became seized in fee of one undivided third interest in said real property of which Mary McArdle died seized, and on his death his widow, Mary Tully, became entitled to a dower interest in said one-third of such real property and his daughter, Margaret Kerr, of the fee thereof subject to the dower interest of her mother.

The Code of Civil Procedure expressly provides that the People of the state may be made a party defendant to an action for the partition of real property in the same manner as a private person (section 1594), and in such action the court may in its discretion render judgment against any party to the action for the costs and expenses thereof. (Section 1579.)

We cannot interfere with the discretion exercised in this case. The judgment should be affirmed, with costs.

Cullen, Ch. J., O'Brien, Edward T. Bartlett, Haight, Vann and Hiscock, JJ., concur.

Judgment affirmed.