JOHN GEORGE et al., Plaintiffs, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant.

Supreme Court, Special Term, Kings County, March 16, 1943.

*Maurice R. Cheyette* for plaintiffs.

*Nathaniel L. Goldstein, Attorney-General (Warren H. Gilman* of counsel), for defendant.

SMITH, J. This is an action to remove a cloud on plaintiffs' title to certain land by reason of the State's possible right of escheat. On behalf of the State the Attorney-General asks for a dismissal of the complaint on the ground that, as a matter of law, the State has a right to claim the title by escheat due to the alien status of the testator from whom plaintiffs derived their title.

On the court's own motion the case has been reargued.

The facts are simple and undisputed. One Severio George (also known as Severio Ciorciari) executed his will on July 31, 1941, and died a resident of this county on February 3, 1942. He devised his realty and bequeathed his personalty to his three surviving children equally. His realty consisted of a small parcel of land improved with a two-family house, located in Brooklyn, which he had purchased some years before he executed his will. The will empowers the executors to dispose of the realty and to distribute the proceeds. This power has not been exercised, apparently because the executors were unable to find a purchaser. To avoid the expense of a judicial partition two of the children, one being a son and one a daughter, for a valuable consideration conveyed their interest in the realty to the third child, plaintiff John George.

Testator, although he resided the greater part of his life in this country, was born, lived and died a subject of the Kingdom of Italy. He died not only an alien, but, by reason of the existing state of war, an enemy alien (*Techt* v. *Hughes,* 229 N. Y. 222, 228). The daughter also is, by birth, an Italian subject and is now an enemy alien. The two sons (including plaintiff John George) are native-born American citizens.

Plaintiffs, husband and wife, recently entered into a contract for the sale of the land. The prospective purchaser has rejected the title claiming it is defective because the sovereign right of escheat vested in the State upon the testator's death as an alien enemy.

The court must take judicial notice that on December 11, 1941, that is, in the interim between the date testator executed his will and the date he died, reciprocal declarations of war between the United States of America and the Kingdom of Italy were formally made and publicly announced.

The specific questions of law to be determined are: (1) Whether testator, in view of his status as an alien friend when he made his will and his status as an alien enemy when he died, was capable of transmitting by devise his realty to his (a) citizen sons, and (b) alien enemy daughter; and (2) if testator was capable of so doing did the subsequent conveyance from the alien enemy daughter to plaintiff, John George, a citizen, give the latter an indefeasible title. These questions require a consideration of both the common and statute law.

It is well settled in this State that under the common law an alien, whether friend or enemy, may acquire land either by purchase or *devise,* but that he holds such land at the will of the

sovereign. It can at any time institute a proceeding known as "inquest of office" for the purpose of determining whether the holder is an alien; and upon a judicial determination of alienage known as "office found," the alien's title and right to possession come to an end; both immediately vest in the sovereign. But until such a proceeding is instituted and until such a determination is made the alien's title and possession, whether they had their origin in purchase or devise, cannot be disturbed; he can treat and dispose of the land as his own except that it always remains subject to the possibility of escheat to the sovereign or State. (*Jackson* v. *Adams,* 7 Wend. 367, 368; *People* v. *Conklin,* 2 Hill 67, 69-72; *Fairfax's Devisee* v. *Hunter's Lessee,* 11 U. S. 603, 619-622, 628-630, prevailing opinion by Mr. Justice STORY; *Wadsworth* v. *Wadsworth,* 12 N. Y. 376, 379, 380; *Hall* v. *Hall,* 81 N. Y. 130, 134, 136; *Marx* v. *McGlynn,* 88 N. Y. 357, 376.) These authorities expressly point out that the alien's right to acquire and transmit title by devise is in the same category as his right to acquire and transmit title by purchase because in either event the title passes by act of the parties and not by operation of law. Of course, strictly speaking, the term "purchase" always has been understood to include a devise. (3 Bouvier's Law Dict., p. 2771.)

It is equally well established in this State that under the common law an alien, friend or foe, cannot acquire or transmit land by descent (see cases *supra*). The reason for this incapacity is that the transfer of title by descent occurs by operation of law; and under the common law an alien is deemed to be without heritable blood so that heirship through him is impossible. While he may have heirs he has no title which he is capable of transmitting to them (*McCormack* v. *Coddington,* 184 N. Y. 467, 475).

In other words, under the common law, the sovereign, by sufferance, will permit an alien, friend or enemy, until office found, to acquire and transmit land by act of the parties — purchase or devise; but the sovereign will not permit an alien, under any circumstances, to acquire or transmit land by operation of law — descent. Because of such prohibition, upon the death, intestate, of an alien owning land the title ordinarily would be left in suspense indefinitely pending the institution of a proceeding for inquest of office and a determination of office found. In the eyes of the common law, however, such a suspension is intolerable; at all times there must be a vesting of title. To avoid the suspension, therefore, the common law declares that upon an alien's death, intestate, his title to land automatically

and of necessity immediately escheats or reverts to the sovereign without the need of any judicial proceeding or determination of alienage. (See cases *supra; Matter of People* [*Melrose Ave.*], 234 N. Y. 48, 51.)

By statute the common-law alienage disabilities in respect to land have been completely removed in favor of alien friends *only* (Real Property Law, § 10, subd. 2). This statute provides: " Alien friends are empowered to take, hold, transmit and dispose of real property within this state in the same manner as native-born citizens and their heirs and *devisees* take in the same manner as citizens." (Italics supplied.) As to alien enemies, however, the common-law disabilities remain in full force. Alien enemies still " have such rights and such only as were theirs at common law." (*Techt* v. *Hughes,* 229 N. Y. 222, 228, 239, *supra.*)

Bearing in mind that the testator here was an alien friend when he executed his will and an alien enemy when he died, can his devise to his children (two of whom are citizens and one of whom is an alien enemy at the time of his death) be given effect in view of the existing state of the law, common and statute?

As stated, the Real Property Law (§ 10) bestows upon alien friends the right to transmit their realty by deed, devise and descent in the same manner as citizens. The Statute of Wills of this State confers upon *all* persons the right, by last will and testament, to devise " every estate and interest in real property descendible to heirs " to any " person capable by law of holding real estate." (Decedent Estate Law, §§ 10–12.)

Read in the light of the common law, the composite effect of these statutes is to enable any alien, friend or enemy, to make a will, but to allow only an alien friend to devise realty to any person, citizen or alien friend or enemy. This interpretation must logically follow because by statute only an alien friend may transmit realty by descent (Real Property Law, § 10) and because under the common law an alien, friend or enemy, *may* *hold* realty, always subject of course to the sovereign's right of escheat. In this respect the common law still prevails.

It may be noted, however, that at one time or another there were statutes which had changed the common law by making a devise to any alien absolutely void unless he had complied with certain conditions precedent. (L. 1825, ch. 307; L. 1834, ch. 272; Rev. Stat. of N. Y., part II, chap. VI, tit. I, § 4; L. 1909, ch. 52 [Real Property Law], §§ 12, 13; L. 1909, ch. 18 [Decedent Estate Law], § 13; cf. *Beekman* v. *Bonsor,* 23 N. Y. 298, 316; *Hall* v. *Hall,* 81 N. Y. 130, 134, *supra*; *Marx* v. *McGlynn,* 88 N. Y.

357, 376, *supra*.) Such statutory changes and prohibitions continued, in one form or another, until 1913 when they were finally abolished and the common law revived, at least with respect to alien enemies (L. 1913, chs. 152, 153).

Under the present statutes (Real Property Law, § 10, subd. 2; Decedent Estate Law, §§ 10–12), therefore, the testator, being an alien friend when he made his will, was empowered to make a testamentary devise which would effectually dispose of his realty upon his death in accordance with the terms of his testament. This power is coextensive with the power conferred upon him to make a deed of conveyance which would effectually dispose of his realty during his lifetime in accordance with its terms. In both cases the testator, as an alien friend, has been vested with a power and capacity which are plenary in scope and which are equal to the rights of a citizen.

The question then resolves itself into this: Can a testator be divested of his testamentary capacity retroactively and must his will now be annulled because on December 11, 1941, presumably through no fault of his, he involuntarily assumed by operation of law the status of an alien enemy?

The transmission of property by will is a civil right or privilege which the Legislature has conferred upon *all* persons of sound mind. (*Matter of Bergdorf*, 206 N. Y. 309, 316; Decedent Estate Law, §§ 10–12.) It is strictly a personal right in that the capacity to make the will, as authorized and prescribed by the Legislature, must exist in the testator at the time he attempts to exercise the testamentary privilege. The existence of testamentary capacity at any other time, prior or subsequent, is not controlling (*Matter of Lawrence*, 48 App. Div. 83, 87).

It follows, therefore, that testamentary power or capacity, as prescribed by the Legislature, may be neither created nor destroyed retroactively by *events* which transpire after the exercise of such power. Thus, where an infant contrary to statute makes a will and attempts to dispose of real property thereby, the testament will be deemed invalid as to the realty even though at the time of probate the infant had attained majority. (Cf. *Horton* v. *McCoy*, 47 N. Y. 21, 27.) " If there was a lack of legal capacity to make a will at the time of its execution [even] the subsequent passage of a statute removing such incapacity does not affect such will " and render it valid (68 C. J., Wills, §§ 10, 19, and cases there cited). Conversely, if legal capacity to make a will existed at the time of its execution, a supervening event, whether political or international, which imposes a legal status or disability that, in turn, creates a lack of testamentary

capacity, cannot affect such will and render it invalid. This is in accord with the well-established analogous rule applicable to statutes, namely, that they will not be given a retroactive effect unless required by the express language or plain meaning of the statute. (*Jacobus* v. *Colgate,* 217 N. Y. 235, 240.)

In other words, a subsequent change in the status of an alien friend can no more vitiate his last will than his ordinary conveyance. The fact that in the one the vesting of title is future and contingent and in the other it is present and absolute is of no moment. The statutes, enacted for the benefit of alien friends, make no such distinction; and there is no reason why the courts should. Indeed, a reading of the statutes clearly shows that they sanction and protect an alien friend's every form of transfer, *inter vivos* or testamentary, without restriction or limitation and to the same extent as a citizen's. Surely no testament executed by a citizen at a time when he possessed the statutory or legal capacity to make it would be rendered invalid by any subsequent change in his testamentary capacity.

The sole test to be adopted, then, in determining the validity of an alien's testamentary disposition of realty, is whether his status is that of a friend or enemy at the time he executes his testament and not at the time he dies. If his status at the time of execution is that of a friend the statutes invest him with the capacity to make the testamentary devise. (Real Property Law, § 10, subd. 2; Decedent Estate Law, §§ 10–12.) True, the exercise of that testamentary power by an alien, like its exercise by a citizen, is in effect a disposition of property subject to the condition that it may be revoked by him before death and subject to the further condition that the vesting of title is postponed until the testator's death. That, however, is immaterial. The point is that such inchoate disposition comes squarely within the terms of the statutory license.

This case is not to be confused with the case of one who dies, intestate, an alien enemy. In that case, of course, both by the common and statute law, the realty upon the alien's death, by operation of law, immediately escheats to the State. The alien's heirs, therefore, can receive no title; the alien at the time of his death had no title which he was capable of transmitting. (*McCormack* v. *Coddington,* 184 N. Y. 467, 475, *supra.*) Here, on the other hand, the title to the alien testator's realty, by his own act, passed to his devisees under the will as effectually as though it had passed to grantees under a deed of conveyance executed by him at the same time that he executed his testament. that is, when he was still an alien friend.

Nor is this case to be confused with those cases where upon the death of a person intestate the status of the heir is the controlling factor in determining his right to take realty by descent. In such cases the heir must possess the right to take the inheritance at the time of descent cast. Any subsequent change in his status, whether by his own act, by statute, or by the cessation of war, will not qualify him retroactively to receive the inheritance. (*Inglis* v. *Trustees of Sailor's Snug Harbor,* 28 U. S. 99, 120; *Heney* v. *Brooklyn Benevolent Soc.,* 39 N. Y. 333, 337.) Here, of course, we are not concerned with the capacity of the heir to take an inheritance by descent. We are concerned primarily with the power or capacity of the alien testator to make the testamentary disposition and to transmit the title to his realty by devise.

Accordingly, it follows that, since the testator's status at the time he executed his will was that of an alien friend, by virtue of the statutes (Real Property Law, § 10, subd. 2; Decedent Estate Law, §§ 10–12) he was on a parity with a citizen and his devise to his two citizen sons and his alien daughter was valid.

The next question is the effect of the conveyance by the alien daughter of her interest to the citizen son. The daughter, being an alien enemy, under the common law still in force she could, as noted above, take, hold and transmit the title, subject always to the State's sovereign right of escheat. The State has never attempted to exercise its sovereign right; and the daughter has conveyed all her interest in the devised land to plaintiff John George, a citizen.

Such conveyance entitles plaintiffs to invoke the protection of section 15 of the Real Property Law. So far as material this section provides: "The right, title or interest in or to real property in this state now held or hereafter acquired by any person entitled to hold the same can not be questioned or impeached by reason of the alienage of any person through whom such title may have been derived."

The plain intent of this statute (Real Property Law, § 15) is to remove the infirmities in title growing out of the common-law alienage disabilities of anyone in the chain of title (other than the present title holder). Its obvious and necessary effect is to terminate the State's outstanding sovereign right of escheat by reason of such alienage disabilities. But the benefit of the statute is confined exclusively to those persons acquiring the title (to wit, citizens or alien friends) who, except for such remote disabilities, would be entitled to hold it as against the State.

Being a citizen, plaintiff John George clearly comes within both the spirit and language of the statute. The title which he acquired from the alien daughter he is entitled to hold because, as already pointed out, until office found she had the right to convey her defeasible title to him; and he, of course, had the right to acquire it. Upon his acquisition, however, the title, by virtue of the statute, immediately became indefeasible, for the statute expressly prohibits his title from being questioned or impeached " by reason of the alienage " of the daughter from whom he derived it.

Hence, as to the alien enemy daughter's interest in the land, her conveyance has vested in plaintiff John George a good title, free from the State's sovereign right of escheat.

The court has considered plaintiffs' claim of equitable conversion under the terms of the will but finds such claim to be without merit. There is no need to discuss it in view of the conclusions reached on the other questions.

The court, therefore, adheres to its original determination. It directs judgment in plaintiffs' favor declaring that the State does not have any sovereign right of escheat to the realty and that any claim to such a right does not constitute a cloud on plaintiffs' title.