¡Judge Marshall
delivered the opinion of the Court
— Judge Ewing did not sit in this case.
Johnson, as executor of Moore, obtained a judgment against Covington, for eight hundred and ninety seven dollars and five cents, with interest from the 12th day of November, 1821, upon an obligation of that date, executed by Vance, with Covington as his security. To enjoin a large portion of this judgment, on the ground of usury and want of consideration, Vance and 'Covington filed their bill in Equity, on the finál hearing of which, the injunction was perpetuated; and a writ of error is prosecuted by Johnson, to reverse this decree.
It seems, that a judgment having been rendered in favor of McFadden and others, against Vance, and Johnson as his security, and an execution thereon being "in the hands of the sheriff, repleviable for two years— Johnson about the 12th of November, 1821, in pursuance of an agreement between ’himself and Vance, joined in the replevy bond for the payment of three hundred and forty dollars, thirty six and a half cents, In two years, with interest, and assigned to Vance, by way of loan, two demands which he held as executor of Moore, and which were in the progress of collection, •under endorsements that bank notes, then greatly depreciated, would be received in payment; in consideration of which, Vance, on his part, with Covington as his surety, executed a note, bearing date the 12th of November, 1821, payable to Johnson, as executor of Moore, for the sum of eight hundred and ninety seventy dollars, *362 five cents, to be paid on or before the first of February, 1823, with interest from the date. Of this sum, four hundred and seventy three dollars, thirty seven and a half cents, were included in the note on account of the seourityship of Johnson in the replevy bond; and Johnson executed and delivered to Yance, a writing, of the same date, the effect of which was, that if Vance should pay the replevy bond, and save Johnson harmless therefrom, the note should have a credit for four hundred and seventy three dollars, thirty seven and a half cents, with the interest on that sum. The residue of the note was on account of, and about equal to, the nominal amount of the two demands assigned by Johnson as executor of Moore. Vance failed to pay the replevy bond; and about a year after it became due, it was discharged, without execution, by Johnson — the principal and interest then amounting to four hundred and one dollars, fifty cents. Some years afterwards, Johnson obtained against Covington, the judgment first mentioned; of which so much as exceeds the amount of the replevy bond, together with the specie value of the demands assigned to Vance (considered as paper debts,) was perpetually enjoined by the decree now complained of.
•Aju8gmeiit'isTe'covered against a principal and surety. Upon an agreement, between them, the ■surety signs the replevin bond, and the principal gives him anote, -which includes 'the full amount ■of the replevin bond, with a'bout SO pr cent, added to it; and the surety agrees in writing, to credit the note with the same amount, provided the principal pays the replevin bond himself. — • They agree, in the pleadings, that the arrangement was intended — not merely to have the effect ofapenalbond— but as an indemnity to the surety in case the payment of the replevin bond should devolve on him. Held„ that this contract is but an agreement for a loan of money in a certain contingency, at a future day, upon an agreem ’t that, more than sixpr cent, should he paid for the loan,, and is usurious. The surety may enforce a judg* ment he has on the note, to the amount actually paid by him in. discharge of thereplevin bond,, with legal interest from the time, when he paid it. For the balance,, the principal is-relieved in.equirty-
*362 The principal question presented for consideration, is, whether this transaction is usurious, in either -or both of its branches. And we shall first consider, with a view to this question, that part of the contract which relates to the securityship of Johnson in the replevy bond. If the writings relating to this portion of the contract had been separately executed, without embracing the sum to be given for the assigned debts, they would have had very much the appearance of a penal bond, with a defeasance or condition, and would have presented a familiar case for equitable relief. As the writings stand, we might be disposed to view them in this light, but that neither of the parties places them upon that ground. It is clear from the statements of both, that the sum of four hundred and seventy three dollars, thirty seven and a half cents1 — exceeding by more than thirty per cent, the amount of the replevy bond — was not inserted in the obligation of Vance and *363 Covington to. Johnson, as a. penalty either to ensure the payment of the replevy bond by Vance, or to- secure to Johnson the real damages which he might sustain, if by reason of Vance’s failure, he should have to discharge it. It was the sum agreed to be paid by Vance to Johnson, if the latter should be compelled to pay the replevy bond; and it was only on condition of being secured in the payment of this sum, in the event supposed, that Johnson agreed to join in the bond.
The complainant, it is true, alleges that Johnson assumed to pay the debt to McFadden, and that the note for four hundred and seventy three dollars, thirty seven and a half cents, was required and given in consideration of that assumpsit, and of the time allowed by Johnson for payment, and that the defeasance was executed to give color to the usurious contract. But Johnson denies these allegations, and places the transaction on the footing which has been stated. He insists on the right to coerce the entire sum, with .interest, as being the indemnity agreed on in case he should have to pay the replevy bond, into which he would not have entered on any other terms. But if this stipulated indemnity was usurious, the fact that it was agreed upon by the parties, and that it formed the sole inducement upon which Johnson united in replevying a debt for which he was already bound as surety, cannot sanction it. Laying out of view the fact that Johnson was already bound for the debt, as a defendant to the judgment, there is no single circumstance which can distinguish this from any other case in which an individual about, to become the surety of a debtor, of whose ability to pay he entertains great doubts, requires, as the condition of his becoming bound, that the debtor shall secure to him the payment of a much larger sum than the principal and. interest for which he is to become responsible, in the event of his having to pay the debt as surety. We proceed, therefore, to enquire whether the statute against usury applies to such a transaction, in which the surety having paid the debt, demands from his principal the stipulated indemnity, without showing any other criterion by which the indemnity was fixed in the contracts, *364 or by which its justness can be now measured, but the payment and forbearance of the debt.
^ there be in the case the substance of a loan, it is subject to the restrictions of the statute (Dunham vs. Day, 13 Johns. Rep. 44;) and if, on that loan, more is to be repaid than at the rate of six per cent, per annum, it is usurious. It is often, difficult to determine whether a transaction amounts to a loan or not. But it would seem to be unquestionable, that the advance of money by one individual, to or for another, upon a contract to be repaid, amounts to a lending, under the statute; and it is evident that there has been, in this case, an advance of money by Johnson, for Vance, on a contract to be repaid. It is equally clear, that the sum agreed to be repaid by Vance, and now demanded by Johnson, is greatly more than, the sum advanced, with legal interest. And there being,, as. already stated, no other apparent consideration for the repayment, but the sum advanced and the forbearance of the debt, it seems to us, that the excess above that sum, with legal interest upon it, is-usurious..
It is no objection, to this conclusion, that Johnson paid Vance’s debt, as his security in the replevy bond,, because Vance would not pay it himself. He entered into the bond voluntarily, and thereby subjected himself to the liability of paying, it if Vance did not.. He did so on the condition that Vance should secure to him the repayment of a much larger sum, in case he should have to discharge the replevy bond, by reason of Vance’s failure. And the whole contract, taken together,, amounts substantially to an agreement, that if Vance, shall require Johnson to advance his money for him, at a future day, he will oblige himself to do it, on being secured in the repayment of a large additional sum. It would be easy to evade the statute of usury, if the agreement to advance money to another at a future day,, to be subsequently repaid by him,.were not considered as an agreement for a loan, or (what is the same thing) as an agreement for the forbearance of a future debt,, which, when made, would be usurious, if the sum to be repaid exceeded what the law allows. And the fact *365 that the advance of the money is, by the agreement, to depend upon a contingency which may or may not happen, makes no difference, if the repayment of the advanee, should it actually be made, is secured without any condition. A conditional agreement to make a future loan, is as susceptible of usury as an absolute agreement for a loan, future or present. And in either case, if the money be actually advanced, and by the agreement more than six per cent, has been reserved upon it, it is usurious. The law fixes the value of the use of money; and when there is no other consideration but the advance of money and forbearance, it does not allow a surety, any more than a stranger, to reserve more than its fixed legal value.
It is argued for Johnson, that he had a right to charge for the use of his name and credit, and for the hazard incurred for Vance, whereby the forbearance of his debt was procured; and that such charge as was agreed on by the parties, on this account, ought to be enforced. But this is no more than a loan of his name and credit, and as, in this transaction, the value of these and of the consequent hazard could not exceed the value of the debt itself, which was forborne, he had no right to charge more for any of them, than at the rate of six per cent, per annum, upon the debt which he became liable to pay. Dunham vs. Day, ubi supra; Fanning vs. Dunham, 5. Johns. Chy. Rep. 134; Morton vs. Legrand, 2. Littell's Rep. 328. But as Vance was to pay nothing to Johnson, unless the latter should discharge the replevy bond, it is manifest, that no charge was made for Johnson’s name and credit and risk, nor for any thing but the payment of the replevin bond, and the forbearance of the debt. Whether the forbearance for which the charge was made, was that which might occur after Johnson should pay the bond, or that which was procured by the execution of the bond, is immaterial. (Morton &c. vs. Legrand, ubi supra.) But we infer from the answer, that the forbearance or delay, which, in consequence of the endorsement and replevy laws then in force, was expected to ensue before Johnson, if he should have to pay the replevy bond, could collect the money from *366 Vance and Covington, formed a principal ground of the; excessive charge which was made.
One party applies to another for the loan of certain demands; ^e^payaWe^n depreciated bank paper,are assigned to him; he uses them to pay-similar debts of his own, gives his note, with security, to the lender, payable at a future day, for the nominal amount, in speHe, with intercst. xhc transaction is nsuri°us t° the extent tionofthe bank paper.
We therefore entertain the opinion, that this part of t[ie transaction was usurious; and that Johnson is entitied to recover nothing more, on account of his payment. of the replevy bond, than the actual sum paid by him in. discharging it, with interest on that sum, from the day on which it was paid; and as the decree rendered, allowed him only the principal sum due by the replevy bond, with interest from the date, it is in that respect erroneous. He would he entitled to the same, and nothing more, if the sum of four hundred and seventy three dollars, thirty seven and a. half cents, inserted in the note of Vance and Covington, had been considered, as amere penalty.
The executions agreed to be assigned by Johnson to.Yance, and which formed, as has been stated, the con-7 7 7 sideration lor the residue of the note on which the judgment against Covington was obtained, were endorsed, that notes of the Bank of the Commonwealth, &c. would be received in payment. One of these executions had issued on a three months sale bond, taken under an execution which had been similarly endorsed; the other was an execution upon a judgment,, repleviable for three months. The first was actually assigned by Johnson, at the request of Vance, to a third person, in discharge of an execution against Vance and. Johnson, who was his surety; which execution was also, / * * endorsed for Bank notes. The second execution was. assigned to Vance, by Johnson’s agent, on the 19th of December, when it had been replevied for three months, and, on the same day, Vance assigned it to Covington. The rate of exchange between specie and Commonwealth Bank notes, was from 40 to 43 per cent. And in consideration of the assignment of these debts, Vance and Covington, according to agreement, bound themselves to pay, in dollars, a sum equal to the nominal amount of the debts, including interest, together with interest on the whole sum from the date of their note, which was payable in about fifteen months.
Where, upon an application, by one who is in immediate want,for a loan — either in money or goods, or both — property is advanced at a price above it3 value, the transaction, though in the form of a sale, is always deemed usurious.
In all cases where it is alleged,f that there was in fact a loan, in the form of property, sold,thefacts that there was an ap. plication for a loan,and that the applicant was pressed, are essential in determining the true character of the transaction. The extent of the usury is ascertained by comparing the agreed price of the goods SfC. with their current value.
This transaction is also charged in the bill, to have been usurious; and whether it was so or not, is the only remaining question. Johnson, in his answer, states, that after he had repeatedly refused to join in the replevy bond for the McFaddin debt (spoken of in a former part of this opinion,)Vance at length applied to him to join in the bond, “and/or the toan of some demands he held as executor &c.” and offered Covington as security, as well to indemnify him against the payment of the replevy bond, “as for the demands he wanted to borrow;” and the demands were accordingly transferred, as above stated. We feel authorized, therefore, to infer, that this was understood by the parties to be a lending and borrowing of these debts; and that their nominal amount, with interest thereon, was agreed to be repaid in specie, in which medium Johnson now claims full payment.
If this was to be considered as a transfer of debts payable in depreciated Bank paper, we think there can be no doubt, that the contract to repay the nominal amount in specie, was usurious. If, upon the application for a loan of money, by one in immediate necessity, property be advanced on a credit, at a price above its value, the transaction is usurious, though made in the form of a sale. Low vs. Waller, Doug. 736. Or if, on such an application, a part be advanced in money and a part in goods above their value, it is usury. 7 Johns. Rep. 196.
In these and other similar cases, where property is the apparent subject of the contract, the fact, that there was an application for the loan of money, and that the applicant was in immediate need of money, is important, as showing that although no money passed betw-een the parties, but property only, yet that the available proceeds of that property was the real object looked to on one side, and the repayment of those proceeds, with an exorbitant advance, was the real object on the other. On this ground, the transaction, though apparently a sale of goods, is held to be really a loan of money; and the usury is determined by comparing the current value of the goods with the value as fixed in the contract for repayment. There have even been instances, in which, after a sale has been determined to be merely colorable^ *368 ■and the transaction held to be a loan of money, because a loan of money was applied for, an inquiry has been instituted to ascertain the exact price for which the borrower sold the goods, and that price is taken as the real amount borrowed.
The principle is exactly the same where the application is not for the immediate loan of money itself, but for the loan of goods, for the avowed purpose of being turned into money, to answer the immediate necessities of the borrower, and when the other party lends the goods not to be returned in kind, but to be paid for in money, at a future day, and at a price greatly exceeding their current and well ascertained value. In the case just supposed, the transaction is expressly a loan; and, although the goods are not advanced upon an application to borrow money, it is in substance a loan of money, •and the current value of the goods, in money, must be "considered as the true value of the loan. There is no real distinction between an application to borrow property, for the purpose of turning it into money, to be used for the payment of pressing debts, and an application to ■ borrow for the immediate purpose of paying those debts wifh the property itself. In either case, the value of the loan is the current value of the goods loaned; and whether the loan is usurious or not, is to be ascertained by comparing that value and its interest with the sum agreed to be repaid for it.
The present case is stronger than either of these, because, as the executions which Vance applied to borrow, ‘had no value in themselves, but were only valuable as 'representing the sums of money collectable upon them 'and as authorizing their collection, the transfer of them, 'for use and to be repaid in money at a future day, is ;prima facie a loan of the sums of money due or payable upon them; and the lender cannot legally charge for them more than the amount for which they call with legal interest upon it, whether the transaction be in the 'form of a loan or of a sale. If, therefore, these executions had been collectable immediately in specie, and, Vance had applied for the use or loan of them, and Johnson had transferred them to him, upon a contract for the *369 repayment, at a future day, of a greater sum than they called for, with its interest, it could not have been any thing else than a usurious loan. He could not, in that case, have been permitted to charge more for the mere instrument by which money was to be collected, than for the money itself, had it been in hand. On the same principle, if the executions were payable in depreciated Bank notes, he had no right to charge for the loan of them, more than he would have had a right to charge for the Bank notes themselves. If there could be any doubt that the transfer of the executions in this case was intended and understood as a loan, the fact, that Vance was to pay interest upon their nominal amount, from the date — which would be considered as conclusive, if the Bank notes themselves had been transferred — must also be taken as conclusive as to the transfer of the executions.
A party sells to ■an applicant for a loan, demands due by ex’ons, endorsed that (,de preciated) notes on the hank #•<:. will be received, and takes an obligation for the nominal amount in specie: — the transaction is nsurious; and not the less so, for the fact that the assignee might withdraw the endorsement, and collect the specie eventually, when no such thing was done, or contemplated by either party.
But it is contended, that the value of the loan ought not to be estimated by the value of the Bank notes, because, although the executions were endorsed that Bank notes would be received, Vance might, by pursuing a certain course, have converted them into specie demands ; and might, after a delay of more than two years, have collected the specie upon them. But admitting that this could have been done, there is no certainty, that the parties, at that time, were aware that it could be done; and it is perfectly clear, that such a course was not within their contemplation at the time. The executions were in fact payable in Bank notes when the agreement for the transfer was entered into; and they •might have been so paid before the time when they were actually assigned. Johnson had made them paper debts by his endorsement; and he knew that Vance wanted them for immediate use, to pay his debts by assigning them to his creditors, or by raising the money upon them. As paper demands, they were payable within a few weeks, or a few months, and might answer his purpose. As specie demands, they could not have been collected without great delay and difficulty; and it is impossible to suppose that, with a view to such delay-, Vance would have agreed to pay their nominal amount, *370 with interest from the date, in specie, before they could have been collected in specie. Johnson did not so understand the transaction. He, in fact, transferred one of the executions in discharge of an execution payable in paper, as already stated; and he knew that Vaneo was in difficulty with regard to the payment of his debts. We are therefore satisfied, that the executions were regarded by the parties, and should be regarded by this Court, as paper demands; and that this part of the transaction was usurious. From the connection between the two parts of this transaction, which reflect mutual light on each other, inferences might be drawn corroborating the conclusions to which we have come, in viewing them separately; but it is unnecessary to notice them.
It follows, that the amount of the executions assigned should have been scaled to their specie value at the time of the assignment; and that Johnson was entitled to that value, with interest until paid; and we do not perceive any error in the decree in relation to this part of the subject. But it has been before shown, that the decree was erroneous in perpetuating the injunction for too great an amount on account of that part of the transaction which relates to the securityship of Johnson in the replevy bond to McFadden.
For this error, the decree is reversed, and the cause remanded with instructions to dissolve the injunction for such an amount as will allow to Johnson the benefit of his judgment to the extent of the aggregate amount of the specie value of the executions, at the date of their assignment, with interest from that date, and of the sum paid by Johnson in discharge of the replevy bond, with interest from the date of payment.