Croan, &c., v. Phelps' Adm'r.

CASE 32—PETITION EQUITY—MARCH 25.

# Croan, &c. v. Phelps' Adm'r.

APPEAL FROM BULLITT CIRCUIT COURT.

1. INHERITANCE FROM BASTARD.—The collateral kindred of the mother of a bastard can not inherit from the bastard.
2. SAME—Upon the death of a bastard without kindred who can lawfully inherit from him his widow takes the whole estate.

CHARLES CARROLL FOR APPELLANTS.

Appellants are the maternal kindred of the intestate, and therefore they and not the widow inherit. (Gen. Stats., chap. 31, sec. 5; *Idem*, sub. sec., 9 of sec. 1; *Idem*, chap. 21, sec. 16; Cooley, &c. v. Henry, 5 Pick. (Mass.), 93; Scroggin v. Allan, 2 Dana, 362, dissenting opinion of Judge Underwood; Jackson v. Jackson, 78 Ky., 390; Prochet's Adm'r v. Scherzer, 82 Ky., 481; Sutton v. Sutton, 87 Ky., 216; Bingham on Descent, 481; Schouler on Domestic Relations, sec. 277.)

J. W. CROAN ON SAME SIDE.

The estate of a bastard descends in the maternal line to the mother, and she being dead her legal representatives succeed to her right. (Sutton v. Sutton, 87 Ky., 217; Gen. Stats., chap. 31, sec. 1, subsec. 1–6; *Idem*, sec. 5; Power v. Hafley, 85 Ky., 671; Drain v. Violett, 2 Bush, 157; McKannie v. Baskerville, 7 S. W. Rep., 194; Swanson v. Swanson, 2 Swan, 459; Ross v. Ross, 129 Mass., 267; Talbott v. Talbott, 17 B. M., 1; Webster's Dictionary, words "legitimate," "inheritance," "kindred."

FAIRLEIGH & STRAUS FOR APPELLEE.

The kindred of the mother of a bastard can not inherit from him. (Schouler Dom. Rel., 3rd edition, sec. 277; Gen. Stats., chap. 31, sec. 5; Sutton, &c., v. Sutton, &c., 87 Ky., 217; Jackson v. Jackson, 78 Ky., 390; Allen v. Ramsey, 1 Met., 635; Berry v. Owen, 5 Bush, 452; Remmington v. Lewis, 8 B. M., 606.)

And as the intestate in this case has no kindred upon whom the statute of descents casts the inheritance the widow takes. (Gen. Stats., chap. 31, sec. 1, subsec. 9.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Wesley Phelps, at quite an advanced age, died in-

testate and without issue, the owner of a large estate in Bullitt county, Ky.

The proof is clear that he was the illegitimate son of Alice McDaniel, whose death preceded his some years. He left a widow who claims the entire property. It is also claimed by the descendants of the brothers and sisters of Phelps' mother Alice; and the sole question presented upon this appeal is who takes the property. The lower court gave it to the widow, or rather to her devisees and legatees, she having died after instituting this action.

The appellees base their claim to the estate under subsection 9, section 1, chapter 31 of the General Statutes, which provides that if there be neither paternal nor maternal kindred, the whole estate shall go to the husband or wife of the intestate. They say that by "kindred" is meant such as can lawfully inherit. The mother being dead and their being no legal father, and no provision for the transmission of inheritance from a bastard to collaterals, the appellees contend it is as if the paternal and maternal kindred were wholly extinct, and that the contingency arose upon which the widow became entitled to take the whole estate.

The appellants contend that under section 5 of the statute quoted, the mother, if living, would have taken, and that her brothers and sisters, or their descendants, must now take in her stead; that the intestate was capable, under the statute, of transmitting the estate to and through his mother on to them. That section is as follows:

"Bastards shall be capable of inheriting and trans-

mitting an inheritance on the part of or to the mother, and bastards of the same mother shall be capable of inheriting and transmitting an inheritance on the part of each other, as if such bastards were born in lawful wedlock of the same parents."

It is insisted that the expression "on the part of or to the mother" must be construed liberally and as meaning transmissibility of estate, not only "to" but through the mother, and on to her collateral kindred. In determining the meaning of these words and the proper legal exposition of the statute, we must keep in mind that by the rules of the common law a bastard had no inheritable blood, and could neither receive from nor transmit an inheritance to his father, mother, brothers or sisters. The Kentucky Statute of Descents of December, 1796, was an innovation on the common law, and was as follows: "Bastards also shall be capable of inheriting, or transmitting inheritance, on the part of their mother, in like manner as if they had been lawfully begotten of such mother."

This was a copy of the Virginia statute of 1787, and with reference to which the Supreme Court of the United States, in Stevenson's Heirs v. Sullivant, 5 Wheat., 255, said: "We understand it to be that they (bastards) shall share a capacity to take real estate by descent immediately or through their mother in the ascending line, and transmit the same to their line as descendants in like manner as if they were legitimate."

The expression "on the part of their mother" was not held to confer the right to inherit on the mother

from her bastard child, but the whole effect of the section and this expression was simply to enable the bastard to take by inheritance from or through the mother in the direct line, and to pass that inheritance with the same directness to his own issue. And the illegitimate brothers in that case were denied the right to inherit from their legitimate brother. While *quasi* legitimates in some limited respects, they were nevertheless said to be bastards in all others, and as such could have neither father, brothers or sisters, and their inheritable blood was confined within the narrow limits of the very letter of the law. This restricted construction was followed by the Kentucky courts until the act of 1840, though not without a strong dissent in Scroggin v. Allan, 3 Dana, 363, decided in 1834. This act provided "that the mother shall be, and is hereby, rendered capable to inherit as heir or distributee of her bastard child, and brothers and sisters of the same mother, born out of wedlock, shall be capable to inherit and take by descent or distribution from each other as though born in wedlock, and as brothers and sisters of the whole blood." And notwithstanding the seeming generous intention of the statute to make the illegitimate child legitimate *ex parte materna* to all intents and purposes as though born in wedlock, yet in Remmington v. Lewis, 8 B. Mon., 606, decided in 1848, the court used this language: "It is impossible, upon any admissible construction of the *language of the act*, to consider it as establishing a legal relationship for the purpose of inheritance between a bastard and any other of his natural relations but his *mother* and such other *illegitimate* issue as she may have."

"It does not operate to establish a right either in the illegitimate children to inherit from the legitimate, or in the legitimate children to inherit from the illegitimate."

"Under this construction," says the court, "the bastard has, in view of the law of descents, no brothers or sisters except the illegitimate children of the same mother, and *no other collateral kindred* who can take his estate as heirs; and upon his death without issue, without lineal maternal ancestor alive, and without brother or sister, the illegitimate issue of his mother, or their descendants, his wife, if he leave one, is his heir under the 14th section of the statute, and not the legitimate son of his mother."

If the legitimate son of the mother of the bastard can not inherit his estate through their common mother, how can the collateral kindred of the mother, in this case, hope to do so? It can not be contended that our statute is more liberal than that of 1840. Indeed it is only by a forced construction that the mother herself can be said to inherit from her bastard child. The plain act of 1840 conferring, for the first time, that right on her in its opening clause, thus: "That the mother shall be, and is hereby, rendered capable to inherit * as heir * of her bastard child," was not inserted in the Revised Statutes (1852) or the General Statutes (1873). Instead thereof, the old eighteenth section of the Kentucky Act of 1796, copied from the Virginia Act of 1787, was adopted with the interpolation of the words "or to," after the words "on the part of." And suppose we adopt the construction given this statute by the Su-

preme Court of the United States in Stevenson's Heirs
v. Sullivant *supra*, and followed by a majority of
this court, in Scroggin v. Allan, above quoted, we
would have this state of case : "Bastards shall be
capable of taking real property by descent immedi-
ately or through their mother, or on the part of their
mother, and transmitting that same estate without
alteration to their own issue and to the mother."
The old statutes were consistent and harmonious,
simply empowering the bastard, though within nar-
row limits, to inherit property from his mother,
which, under the common law, he could not do, and
transmit the same to his own issue. Now, singularly
enough, after so inheriting it he is permitted to trans-
mit it "*to the mother*" from whom he has just inher-
ited it !

The well-known legal meaning of the expression
"on the part of the mother," as construed by the
courts, must, therefore, be discarded, and it must be
supposed that they were used in the statute in the
sense of "*from* the mother," hence the meaning is
as if the reading was : "Bastards shall be capable
of inheriting and transmitting an inheritance from
or to the mother." And even this solution is well
nigh defeated by the rejection of the alternative
"or" properly used in the old statute, and inserting
the word "and" in the present one, thus requiring
the same estate to be inherited and transmitted to or
from the mother. However, the statute must be con-
strued to mean that bastards shall be capable of in-
heriting from the mother, and of transmitting an
inheritance to the mother, and so must be held to

embody, in substance, the provision of the acts of
1796 and of 1840, but certainly not to extend or
broaden them. In the case of Sutton v. Sutton, 87
·Ky., 217, some progress was made toward liberaliz-
ing this section, and there the legitimate children of
a bastard take what he, if alive, would have taken.
from an illegitimate brother of the same mother—
but it was done under the statute making bastards
capable of inheriting and transmitting an inheritance
on the part of each other, as if born in lawful wed-
lock of the same parents. There is no such statute
in aid of the collateral kindred of the mother. In
Allen v. Ramsey's Heirs, 1 Met., 635, and Berry v.
Owens' Heirs, 5 Bush, 452, the right of the bastard to
inherit from the mother's collateral kindred was very
decisively negatived.

In Jackson v. Jackson, 78 Ky., 390, this court,
through Judge Cofer, held that the bastard could
not inherit through his mother from her ancestors.
"It must be regarded," says the court, "as the set-
tled law of this State that a bastard can not inherit
from collaterals from whom his mother, if living,
would have inherited, * * and it would seem to
follow, as a necessary logical sequence, that he can
not inherit from the ancestors of his mother." And
while the exact question was not before the court,
the learned judge added: "And this construction is
somewhat fortified by the fact that a bastard can
only transmit an inheritance in the ascending line
'to his mother;'" and to preserve harmony in the
construction of the statute the court was constrained
to adopt this confessedly strict construction. What-

ever might have been the original intention of the law-makers towards broadening the inheriting capacity of the innocent off-spring of their mother's incontinence, it must be confessed that a rather illiberal view of the statutes respecting them has obtained, which, however, must now be adhered to.

Let the judgment below giving the estate to the wife's beneficiaries be confirmed.