HELLER v. TEALE, Public Adm'r, et al.

(District Court, E. D. New York. June 27, 1914.)

**1.** BASTARDS (§ 104*)—INHERITANCE THROUGH ILLEGITIMATE DECEDENT—CONSTRUCTION OF NEW YORK STATUTE—"RELATIVES."

New York Real Property Law 1896 (Laws 1896, c. 547) § 289, relating to descent, provides that "if an intestate, who shall have been illegitimate, die without lawful issue * * * the inheritance shall descend to his mother; if she be dead, to his relatives on her part as if he had been legitimate." Code Civ. Proc. N. Y. § 2732, in force in 1908, relating to distribution, provides that "if the deceased was illegitimate, and leave a mother, and no child, or descendant, or widow, such mother shall take the whole. * * * If the mother of such deceased be dead the rela-

---

tives of the deceased on the part of the mother shall take in the same manner as if the deceased had been legitimate." *Held*, that the effect of such provisions is to make all those who could, in case of a legitimate decedent, inherit or receive property through the lines of descent and distribution, by a relationship established on the part of the mother, in case of an illegitimate decedent, competent and entitled to receive the property to the same extent and by the same channels of inheritance as if the deceased had been legitimate; that, failing direct descendants of the mother, or brothers, or sisters, of the mother living, descendants of her deceased brothers and sisters are "relatives of the deceased on the part of the mother," and as such entitled to inherit both real and personal property under the statute.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 251, 257–262; Dec. Dig. § 104.*

For other definitions, see Words and Phrases, vol. 7, pp. 6054–6058; vol. 8, p. 7783.]

2. DESCENT AND DISTRIBUTION (§ 21*)—PERSONS ENTITLED—"NEXT OF KIN."

As used in the law governing descent and distribution of personal property, the phrase "next of kin" (the husband or widow not being included within those words) includes collaterals and their representatives or descendants.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 57–62; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 5, pp. 4798–4804; vol. 8, p. 7732.]

Suit by Marie Heller on her own behalf, etc., against Charles E. Teale, individually and as public administrator of the county of Kings, upon the goods, etc., of Eleonore K. Bader, deceased, and others. Decree in favor of one of the several groups of claimants.

William P. Maloney, of New York City, for plaintiff Heller.

Henry F. Cochrane, of Brooklyn, N. Y., for defendant Teale and another.

Rounds, Schurman & Dwight, of New York City (Carl A. Hansmann, of New York City, of counsel), for defendants Vasseux and others.

M. E. Finnigan, of Brooklyn, N. Y., for Eleanor A. Monahan.

John M. Zurn, of Brooklyn, N. Y., for Lulu and Frank E. Bader.

Wilson R. Yard, of Pleasantville, N. Y., for Katherine F. Bader.

Coudert Brothers, of New York City, for Marie Yersin and another.

Thomas Carmody, Atty. Gen., and Joseph W. Keller, Deputy Atty. Gen., for the People of the State of New York.

Ralph Underhill, guardian ad litem, of Brooklyn, N. Y., for Georgette Bader.

CHATFIELD, District Judge. This action arises from opposing claims to certain property left by one Eleonore F. Bader, who died in Brooklyn, December 27, 1908. Letters of administration were issued to Charles E. Teale, as public administrator of Kings county, upon the 29th day of December, 1908, and a general statement of the personal property left by the decedent has been reported to the court in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this action by the said administrator. Mr. Teale was also appointed receiver of the realty and is in possession thereof.

It appears from the report and from the testimony that the personal estate of the decedent consisted of savings bank accounts established in the name of herself individually or jointly with her first husband; but it will not be necessary to consider at this time, specifically, the source from which, and the date at which, these various items were accumulated or earned.

The time of acquisition and the method of acquirement of the decedent's interest in the real estate also need not be considered until its course of devolution by statute is settled.

The first questions which must be disposed of have to do with the family history and the rights of the various parties to the suit, with respect generally to the personalty and real estate of which the decedent died possessed and seized.

At the time of her death, Mrs. Bader had been a widow since the death of her second husband, Ernest G. Bader, upon the 5th day of April, 1882. No children *of this marriage* survived Mrs. Bader's death, but the said Ernest G. Bader left a last will and testament, duly probated in Kings county upon the 24th of April, 1882, by which all of *his* property was left to his children *by a previous* marriage. Mrs. Bader was survived by two children of his deceased son (George D. Bader), viz., Frank E. and Georgette Bader (a minor who is represented by Ralph Underhill as guardian ad litem), Lulu Bader (widow of George D. and later wife of Charles A. Bader), a second son, George B. Bader and his wife, Katherine F. Bader (George B. Bader has since deceased), and a third son, Charles A. Bader. Charles A. Bader has also died since December 27, 1908, and left him surviving, his widow (said Lulu Bader) and a daughter, Eleanor A. (Bader) Monahan, who was born prior to said December 27, 1908. Lulu Bader has appeared in this action as administratrix, etc., of both George D. and Charles A. Bader, and Eleanor A. Monahan has therefore not been made a party to the action.

It is unnecessary to discuss at this time the individual shares or rights of the Bader claimants as against each other. They as a whole represent the claims of the devisees, next of kin, and heirs at law of Ernest G. Bader, deceased, to the extent that his children by the former marriage might be interested, as next of kin, devisees, or heirs at law in the estate left by his second wife. None of the real estate standing in the name of Mrs. Bader at her decease was purchased by Ernest G. Bader, deceased, nor by Mrs. Bader during his lifetime, and whatever real property Mrs. Bader had before her marriage with Ernest G. Bader had been retained by her as her separate estate, having been in her possession at the time of her marriage with Ernest G. Bader in the month of December, 1877.

Mrs. Bader executed papers under the name of Eleonore Bader and Eleonore F. Bader. She is described in the death certificate as Eleonore Belleville Bader, and in the administration papers relating to the estate of Ernest G. Bader as Eleonore B. Bader. In certain other instruments executed during Mr. Bader's lifetime, she was described as Eleonore K. Bader. It appears from the testimony in this case that

Mrs. Bader's baptismal name was Francoise Eleonore Bonneville, and that she was born on the 10th of October, 1830, at Paris, France. The name Eleonore F. Bader is apparently a transposition of her maiden names, while the word "Belleville," used by the Bader family, would seem to be a mistake or inadvertent reference to the family name Bonneville, for which the initial "B" in Mrs. Bader's name must have stood. The "K" shown in some of the papers came from the name Kress. As to this name the facts and dates appear to be as follows: Francoise Eleonore Bonneville came to the United States when she was about 25 years of age, and married upon the 10th day of July, 1856, in Brooklyn, a German naturalized citizen of the United States by the name of Theodore Kress, who died upon the 7th of March, 1870, and was buried in a plot purchased by his widow in Brooklyn. Theodore Kress had boarded in Paris with the mother of Francoise Eleonore Bonneville, and came to the United States shortly before her coming to this country. During his lifetime certain real estate was purchased and title taken in their joint names, but with a provision that it was to be held to them and their heirs forever. They also made deposits in at least two savings banks in the joint name of both depositors, and at the time of Mr. Kress' death he left a will by which he devised all of his property of every nature to his widow, the probate papers showing that it was less than $10,000 in amount. No children were born of the marriage of Theodore Kress and Francoise Eleonore Bonneville.

From 1870 to 1877 Mrs. Kress continued her work as a dressmaker (which occupation she had previously followed); and her estate seems to have increased until and after the period during which she married, and lived as the wife of, Ernest G. Bader.

Theodore Kress was a child by the second wife of a resident and citizen of the German Empire, who had three sons by his first wife, viz., Edward, Ferdinand, and Charles, but all of whom were dead before the death of Eleonore F. Bader, upon December 27, 1908. Theodore Kress' father had also by his second wife four other children. One of these, a daughter Fannie, died prior to the death of Mrs. Bader. A second daughter, Frederica, married one Simonet. She died prior to the death of Mrs. Bader, leaving a son, Thomas (living in Paris), a daughter Elisabeth, married to one Fischer (living in Liverpool, England), and a daughter Marie, married to one Heller and living at Strasburg, Germany). These children were all living at the death of Mrs. Bader, and presumably are still living. Marie Heller is the plaintiff in the present action. A second son, Emile, married and died before the death of Mrs. Bader, leaving a daughter, Marie Kress, who has lived much of the time in the United States, and is the principal witness in this case, with respect to the relationship of the members of the Kress family. She is a citizen of the United States, and lives part of the time in France. Another daughter, Henriette, married one Yersin, and died before the death of Mrs. Bader, leaving three children, Paul, Marie, and Jeanne, all of whom were living at the time of the death of Mrs. Bader, and presumably are still living.

It further appears from the testimony that Francoise Eleonore Bonneville was the daughter of one Marguerite Bonneville, who died Jan-

uary 25, 1864, in Paris, and to whom a monument was erected by her daughter, Francoise Eleonore, while she was the widow of Theodore Kress. At that time a perpetual right to the lot in the cemetery was paid for and taken in the name of Mrs. Kress. A birth certificate of the daughter Francoise Eleonore was kept in her possession, but the particulars as to the parents have been torn therefrom. The original birth and baptismal record shows that she was the daughter of Marguerite Bonneville, barterer, but no father is mentioned. The death record of this Marguerite Bonneville states her to have been the widow of Jean Gilles Mury, and the testimony shows the marriage on October 15, 1815, of Marguerite Bonneville with Jean Gilles Murie, the birth of a child, Francoise, on the 22d of July, 1817, a child, Toussaint Augustin, on the 27th of December, 1818, and a child Rose, upon the 28th of April, 1820. Murie (or Mury) died upon the 17th of July, 1828, and the records of his estate show that the part not going to his widow went to a sister married to one Jeaux, residing in Normandy, and showing by exclusion or by the omission, and from the provisions of the French law at that time, that no living heirs of the body of Jean G. Murie were then in being. It is also shown that the records of deaths prior to 1830 in the city of Paris were destroyed by fire. There is therefore no evidence that the three children above referred to as the result of the union of Marguerite Bonneville and Jean G. Murie were living at the time of his death. On the contrary, the presumption is that they were known to have died prior to that date. His widow was living and continued to live in the same house in which she had been living with her husband, and where more than two years later the child Francoise Eleonore Bonneville was born, whose estate is now in process of litigation.

It is thus apparent upon the testimony that Francoise Eleonore Bonneville was not the child of Jean G. Murie, was apparently born out of wedlock, and was illegitimate under the French law. Her mother was the fourth child of Pierre Bonneville by his second wife, Jeanne Breton (or Beurton). Other children of this marriage were Marie Jeanne, who died in 1783, Anne, who died in 1853 (part of whose estate went to her sister Marguerite Murie), and Catherine, who married one Thiellement. Catherine Thiellement had four sons and daughters, who were married and who had children, all of whom died prior to the death of Mrs. Bader, except Louise Francoise Vasseux, a party to this action.

Pierre Bonneville, by his first wife, Marguerite Grenon, had five children, Nicolas, who died February 11, 1773, Marie, who died November 5, 1775, another Nicolas, who died January 5, 1777, a son Didier (who married and had children), and a daughter Marie Madeleine (who married one Nicolas Manivert, and had children). The children and grandchildren of Didier Bonneville were all deceased prior to the death of Mrs. Bader. Marie Madeleine Manivert had two sons and two daughters, none of whom were living on December 27, 1908. Each of these four children, however, had been married. The oldest child (Jean Baptiste Manivert) was the father of three children: (1) Marie Eugenie (who married Nicolas H. Barbaras); (2) Marie Madeleine (who married Alphonse M. Royer), and who has a daugh-

ter, Elisa Amanda Hyacinthe (the wife of Emile Doise), and a son, Camille Elysic Adrian; and (3) Elize Stanislas, who died November 4, 1844. The Marie Madeleine Royer above named died in 1911, and Frank V. Kelly was appointed in Kings county administrator of her estate. The oldest daughter of Marie Madeleine Manivert was also named Marie Madeleine, and married Claude Toulouse, having one son, Alexandre Jean Baptiste, who died prior to December 27, 1908. The second daughter of Marie Madeleine Manivert was named Marie Elisabeth, and married one Nicolas Vinot. She had a son, Jean Baptiste Vinot, who married one Leonie A. Le Bar, and had one son, Nicolas Du Paul Vinot, who is still living. Jean Baptiste Vinot has died since December 27, 1908, and Frank V. Kelly has been appointed administrator in Kings county of his estate. The fourth child and second son of Marie Madeline Manivert was named Nicolas Antoine Manivert. He married and had four children, one of whom (Marie Madeleine Aurelie, the wife of Felix Frederic Clement) is still living. The other three children of said Nicolas A. Manivert died prior to December 27, 1908. Hence Marie Eugenie Barbaras, Elisa Amanda Hyacinthe Doise, Camille Elysic Adrian Royer, Elize Stanislas Manivert, Nicolas Du Paul Vinot, Marie Madeleine Aurelie Clement, and Louise Francoise Vasseux, of the descendants of Pierre Bonneville, are collateral relatives by the whole or half blood of Marguerite Bonneville, mother of Francoise Eleonore Bader, were living at the time of taking testimony in this action, and are citizens and residents of France.

One of the descendants of the Kress family, viz., Elizabeth M. Fischer, is a resident of Great Britain, while Marie Heller resides in Strasburg, Germany, Thomas Simonet and the three Yersin children reside in France. Marie Kress has been a citizen and resident of the United States for many years but is now apparently living in France. The Baders are all citizens and residents of the United States.

Some query was raised by the certificate of birth of one Alexandrine, child of Margaret Bonneville, a domestic, but living at a different address than that of Marguerite Bonneville, the wife of Jean G. Murie, said Murie being then living. This child was born at a lying-in hospital, upon the 20th of February, 1818, and no further record as to this child or her mother has been presented. It is evident that the mother is not the same individual as the widow Murie, and no further attention need be paid to the apparently illegitimate child, Alexandrine.

The plaintiff filed her bill on behalf of any other person similarly situated who might choose to join in the action, and named as defendants (including those who have since been brought in) all parties then in being who could be found (either heirs or next of kin or statutory recipients) who might present any claim to either the real or personal property of Mrs. Bader upon the face of the testimony, or even after a possible determination against the claim of any of the other parties.

The state of New York is entitled, under any aspect of the case, to receive payment of an inheritance tax, which must be determined in accordance with the disposition of the estate. But the state of New

York claims further title through escheat of parties capable of taking title to the real estate. Section 10, Real Property Law of New York (Consol. Laws, c. 50), and section 1977, Code of Civil Procedure. It is evident that the Bader family would be subject to no such disqualification, and that the law of escheat could not apply to them.

In the case of the Kress family, all but Marie Kress seem to be citizens and residents of foreign states. The plaintiff resides in Alsace-Lorraine, which is not included in the Kingdom of Prussia or any of the German states with which this country has a treaty with reference to the rights of aliens to inherit. There is no treaty of this sort with the German Empire and no statutes of that country have been proven. Others reside in Paris, and one of them is said to reside in England, with rights under Stat. 33 Vict. ch. 14. This has been held to comply with the New York statute above cited. Haley v. Sheridan, 190 N. Y. 331, 83 N. E. 296. In the case of the descendants of Pierre Bonneville, the testimony shows that a treaty with France is in existence and in force, under which alien citizens of France are assured of the legal rights accorded by the statute of New York to citizens of those countries who allow inheritance by aliens of lands within that country, and therefore there would be no disability on the part of the Bonneville descendants to inherit the realty, so far as any claim on the part of the state of New York to the right thereto by the doctrine of the statute of escheat is concerned.

If there should be a determination that the Kress family have some interest in the realty, then the shares of the respective parties, or the question of which one might take, would require further hearings at the foot of the decree herein.

As to the personalty, there is at present no disability on the part of a foreigner, citizen either of France, Germany, or England, to inherit by statute or bequest; and, as the parties are all properly represented in this action, the state of New York would seem to have no interest beyond that of the transfer tax above mentioned.

Some of the Bader family did not appear on the trial or put in a formal answer, and in general the attorneys for the Bader family have relied upon the propositions presented on behalf of Mrs. Heller and the Kress family. We shall therefore take up the general question as to whether the property should go to the Bonneville descendants as a class, or should go to the collateral heirs and next of kin of the deceased husbands of Mrs. Bader.

It is evident, if the property belongs to either the Kress or the Bader families, or both, that any further inquiry as to the specific portions of the property coming from the estate of either husband, or from that husband during his life, and the effects thereof upon the disposition of the entire property, can be left either for later consideration or for further disposition upon a reference or at the foot of the decree.

In the same way, there is no need of now discussing the proposition that Ernest G. Bader died leaving direct descendants, while Theodore Kress left only collateral descendants, and that if the two sets of claimants were being considered from the standpoint of their degree of relationship to the individual through whom they claim, the Bader

claimants are less remote. Nor need we discuss the proposition that the Bader claimants can more easily prove the right in opposition to a claim of escheat than can claimants who are citizens of foreign countries.

Another question which may be postponed to depend upon the determination of the main issue is the title which Mr. and Mrs. Kress, respectively, had to the savings bank deposits standing in their joint names and to the real estate to which title was taken in their joint names. In the case of a savings bank deposit, the survivor, in the absence of any express direction, would be entitled to the deposit. But even then, it might well be considered property of which the source was to some extent at least the efforts or industry of the other party to the account. In the case of the real estate, the language of the deed by which one parcel was conveyed to Theodore Kress and his wife would indicate that, while they took title jointly (and in the case of husband and wife this would create an estate by the entirety), nevertheless the instrument might be construed as creating interests in common, and, if so, Mrs. Kress (subsequently Mrs. Bader) received her husband's share of this property under his will and not by the original grant. But, again, the consideration of this question will depend upon the determination of the main issue, and, if necessary, can be taken up at the foot of the decree or on accounting.

The provisions of the New York law with respect to the inheritance of real estate, in modification of the common law of descent and the statutes of distribution with respect to personal property, also in modification of the common law, together with the statutes defining the relatives or representatives of the deceased and the next of kin, control the determination of the issue in this case, and substantially the entire controversy between the several sets of parties is based upon interpretation of these statutes.

At present the Consolidated Law of 1909, c. 13, in the chapter known as the Decedent Estate Law, provides, in sections 80 to 97, for the devolution of real property of an intestate, and in sections 98, 99, and 100 as to the distribution of personal property. These sections are a re-enactment of sections 2732 and 2734 of the Code of Civil Procedure, and of sections 281 to 291 of the Real Property Law of October 1, 1896; all previous laws being repealed. But the Consolidated Law went into effect upon the 17th of February, 1909, and the provisions of the New York Code and the statutes with relation to the descent of real estate, as they existed in the year 1908, control the rights of the parties and their interests in the estate at the time of the death of Mrs. Bader. As a matter of fact, so far as all questions herein concerned are involved, the law of inheritance or distribution of real or personal property, in effect at the present time, is no different from that in effect at Mrs. Bader's death, and no question can arise as to the method of distribution on that basis.

The sections (the language of which must be considered) are as follows (with respect to real estate):

Section 281, which provides for the descent of real estate: (1) to lineal descendants; (2) to father; (3) to mother; (4) to collateral relatives.

Section 286: "If there be no father or mother capable of inheriting the estate, it shall descend in the cases hereinafter specified to the collateral relatives of the intestate."

Section 287: "If all the brothers and sisters of the intestate be living, the inheritance shall descend to them."

Section 288: "If there be no heir entitled to take, under either of the preceding sections, the inheritance, if it shall have come to the intestate on the part of either father or mother, shall descend to the brothers and sisters (or to their descendants) of the father and mother of the intestate."

Section 289: "If an intestate who shall have been illegitimate die without lawful issue, * * * the inheritance shall descend to his mother; if she be dead, to his relatives on her part, as if he had been legitimate."

Section 291: "In all cases not provided for by the preceding sections, the inheritance shall descend according to common law."

Section 294: "A person capable of inheriting under the provisions of this article, shall not be precluded from such inheritance by reason of the alienism of an ancestor." Chapter 481, Laws of 1901, added a section (290a):

"When the inheritance shall have come to the intestate from a deceased husband or wife, as the case may be, and there be no person entitled to inherit under any of the preceding sections, then such real property of such intestate shall descend to the heirs of such deceased husband or wife, as the case may be, and the persons entitled, under the provisions of this section, to inherit such real property, shall be deemed to be the heirs of such intestate."

As Mrs. Bader died long after both husbands, no question of title by courtesy is involved, and as Ernest G. Bader left no real estate, no dower rights entered into the matter through the marriage with him. The will of Theodore Kress, leaving his entire property to his widow, takes out of the case any dower rights on her part in his estate, and if he and she were tenants by the entirety of the piece of real estate purchased during their joint lives, title thereto vested in her at his death. Inasmuch as they left no children, and as the law relating to real property makes no provision (except by section 290a) for collateral relatives of a husband, with respect to real estate of the wife, the title to the real estate in this case would seem to rest between the ostensible heirs of Mrs. Bader and the state of New York, except for any property received by her from Theodore Kress, and as to that the question is similar to the proposition as to personal property. The relatives of Theodore Kress and the sons of Mr. Bader by his first wife would be entitled to the property only which had been inherited by Eleonore F. Bader from their father in any case, and in which his wife would have had a life or dower interest. But where the property is the wife's in fee, by purchase or by survivorship, and where the husband predeceases the wife, the relatives of the husband can have no interest, under the express terms of the Real Estate Law, and the provisions, applying the rules of common law in cases not provided for, help neither the Bader nor Kress claimants; for at common law the rule with respect to the real estate in question would be no different. Inasmuch, therefore, as the state of New York is ready to

take some or all the real property by escheat, if there are no persons entitled, the objection presented is twofold: (1) With respect to the alienism of the various claimants, which in general has been previously disposed of; and (2) the claim that the illegitimacy of Francoise Eleonore (otherwise called Eleonore F.) Bonneville left her with no statutory heirs or next of kin at the time of her death, her mother having predeceased her, leaving no other children.

Again, it is evident that at common law, no one could claim relationship, heirship, or kinship to or through an illegitimate, and we must construe the statutes above referred to with respect to the descent of the real property. See Miller v. Miller, 91 N. Y. 315, 43 Am. Rep. 669.

The statute of distribution in force at the time of Mrs. Bader's death provided that personal property not bequeathed by will—

"must be distributed to his widow, children, or next of kin, in manner following:

"1. One-third part to the widow, and the residue in equal portions among the children, and such persons as legally represent the children if any of them have died before the deceased.

"2. If there be no children, nor any legal representatives of them, then * * *

"3. If the deceased leaves a widow, and no descendant, parent, brother or sister. * * *

"4. If there be no widow, the whole surplus shall be distributed equally to and among the children, and such as legally represent them.

"5. If there be no widow, and no children, and no representatives of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased. * * *

"6. If the deceased leave no children and no representative of them, and no father, and leave a widow and a mother. * * *

"7. If the deceased leave a father and no child or descendant. * * *

"8. If the deceased leave a mother, and no child, or descendant. * * *

"9. If the deceased was illegitimate and leave a mother, and no child, or descendant, or widow, such mother shall take the whole and shall be entitled to letters of administration in exclusion of all other persons. If the mother of such deceased be dead, the relatives of the deceased on the part of the mother shall take in the same manner as if the deceased had been legitimate, and be entitled to letters of administration in the same order.

"10. Where the descendants, or next of kin of the deceased, entitled to share in his estate, are all in equal degree to the deceased, their shares shall be equal.

"11. When such descendants or next of kin are of unequal degrees of kindred, the surplus shall be apportioned among those entitled thereto, according to their respective stocks; * * *

"12. No representation shall be admitted among collaterals after brothers and sisters descendants. * * *

"13. Relatives of the half-blood shall take equally with those of the whole blood in the same degree; and the representatives of such relatives shall take in the same manner as the representatives of the whole blood.

"14. Descendants and next of kin of the deceased, begotten before his death, but born thereafter. * * *

"15. If a woman die, leaving illegitimate children, and no lawful issue, such children inherit her personal property as if legitimate.

"16. If there be no husband or wife surviving and no children, and no representatives of a child, and no next of kin, then the whole surplus shall be distributed equally to and among the next of kin of the husband or wife of the deceased, as the case may be, and such next of kin shall be deemed next of kin of the deceased for all the purposes specified in * * * this chapter; but such surplus shall not, and shall not be construed to, embrace any per-

sonal property except such as was received by the deceased from such husband or wife, as the case may be, by will or by virtue of the laws relating to the distribution of the personal property of the deceased person."

Section 2732 of the Code of Civil Procedure of New York.

By section 2734, the same provisions were made applicable to the personal property of married women dying leaving descendants them surviving, and the husband of any such deceased married woman was made entitled to the same distributive share in the personal property of his wife as that to which a widow was entitled in the personal property of her husband.

If Mrs. Bader had been a legitimate child, her personal property could not have passed to either the Bader or Kress heirs. She left no husband and no children, no parents, and no brothers and sisters, at which point "representation" would stop under section 2732, paragraph 12. But she did leave "next of kin," viz., descendants of brothers and sisters of her mother who, if she had been legitimate, would have been relatives of the whole blood, and the line of descent would never have reached the provision which was added September 1, 1901, by chapter 410 of the Laws of 1901, by which if there be no husband or children or representatives of a child, and no next of kin,

"then the whole surplus shall be distributed equally to and among the next of kin of the husband or wife of the deceased, as the case may be, and such next of kin shall be deemed next of kin of the deceased for all the purposes specified in this chapter."

This provision is further limited to personal property received by the deceased from a husband or wife by will or by virtue of the laws of distribution. Under the latter provisions, all of the personalty could not have been distributed to the Kress or Bader claimants, respectively, but some parts thereof might have been traced to those sources.

As there is no disability on the part of aliens with respect to sharing in the personalty of a decedent, we have therefore the single question raised by the illegitimacy of Mrs. Bader, upon which the entire contention of the Kress and Bader claimants is made to rest.

It should be remarked, in passing, that the allegation by some of the Bader claimants of a lost will or a trust fund has been supported by no appearance on the trial and no evidence whatever, and therefore need not be taken up.

As has been said, no substantial difference is shown whether we are considering the right of the Bonneville family to the real estate or to the personal property, for if entitled, they are entitled to both, as the issue now stands. Further, unless it is apparent that they are not entitled, none of the other parties to this action have any claim, except, as has been already stated, a transfer tax is due to the state of New York.

The objection on the part of the Kress and Bader claimants to the claims of the Bonneville family must be considered in two ways. They allege that, as relatives and next of kin of the deceased husbands, they are entitled to such share as they would be entitled to if they were the next of kin of the decedent, Eleonore F. Bader, and also they contend that there are no such next of kin, and that therefore the provi-

sions relating to the relatives or next of kin of the deceased husbands become of some effect. Both of these propositions depend upon the interpretation of the statutes with respect to the meaning of the words, "the relatives of the deceased on the part of the mother shall take in the same manner as if the deceased had been legitimate" (section 2732, subdivision 9), or "if she be dead, to his relatives on her part, as if he had been legitimate" (section 289, Real Property Law). The word "relatives" is broader than the term "next of kin," and may include a husband or wife. Public Administrator v. Peters, 1 Bradf. Sur. (N. Y.) 100; Lathrop v. Smith, 24 N. Y. 417.

Emphasis is laid upon the phrases "next of kin of the *deceased*" and "*his* relatives on her part." It is urged by the Kress and Bader claimants and by the state of New York that relationship or kinship with the deceased is limited to those persons who are named as relatives or next of kin in the inheritance and distribution statutes, and that it does not include all collaterals or persons who might be deemed related or next of kin to the mother. McCool v. Smith, 66 U. S. (1 Black) 459, 17 L. Ed. 218. In other words, that an illegitimate child has no relatives or next of kin lawfully related, but that certain named parties may receive the estate "in the same manner as if the deceased had been legitimate," but without thereby being made relatives. They cite St. John v. Northrup, 23 Barb. (N. Y.) 25, Bollerman v. Blake, 24 Hun (N. Y.) 187, and Stevenson v. Sullivant, 18 U. S. (5 Wheat.) 206, 5 L. Ed. 70, as proving that brothers and sisters of the deceased illegitimate are the only relatives left by the deceased "on the part of his mother." It is said that this phrase "on the part of his mother" means a relative descended from the mother who is the beginning of the illegitimate chain of relatives.

Stevenson v. Sullivant, supra, was a case arising from a claim by illegitimate children of the mother to property of a legitimate child dying intestate. It was held that the capacity of bastards to inherit and to transmit inheritance "on the part of their mother" as if they had been lawfully begotten meant that they would inherit from their mother and transmit it to *their line* as descendants. It is said that the property of the deceased never vested in the mother, so that it could not be transmitted from her to the bastard, or from the bastard through the mother to those who might thereafter inherit from her. This is said to be the meaning of "transmit inheritance on the part of the mother." But the case at bar is much different. Here the phrase defines "relatives on her part," if and in case she be dead.

The Virginia statute was really equivalent only to the New York statute, giving the mother of the illegitimate the right to receive property, if living, or to transmit it to the illegitimate at her death. The Stevenson Case says that the bastard, even under the Virginia statute, could have no *father, brother,* or *sister.* To the same effect is Croan v. Phelps, 94 Ky. 213, 21 S. W. 874, 23 L. R. A. 753.

Inheritance by illegitimates from collaterals is impossible. Croan v. Phelps, supra; Matter of Mericlo, 63 How. Prac. (N. Y.) 62. But the converse does not follow. The doctrine of reciprocal treatment as to illegitimates is unsound. The statutes providing for the descent of property from illegitimates were passed long after the other general

provision of descent and distribution, but before the law making the descendants of a deceased husband next of kin or heirs for certain property, and are to be taken strictly, not as being based upon any doctrine of thereby enlarging the rights of an illegitimate to receive property from any one but the mother. In re Belcher, 149 N. Y. Supp. 479, Surrogate's Court, Kings County, 1909; Bacon v. McBride, 32 Vt. 582.

But even if the natural or blood relation to the mother is made a connecting step for the naming of certain relatives or next of kin of the mother as persons entitled to the property of the illegitimate, then the Kress and Bader claimants urge that strict interpretation limits the descent of the property to the "relatives" of the illegitimate, on the part of the mother; that is, to persons "descended" from her. As has been seen, the ones who were her descendants died before the illegitimate in this case. They say that the words, "shall take in the same manner as if the deceased had been legitimate," refer merely to the proportionate shares or the method of taking, and that the provision allowing letters of administration relates back to the same individuals as those who are named as relatives or next of kin. The Bonneville claimants, on the other hand, assert that no difference under the New York statutes is created by the use of the word "relatives of the illegitimate on the part of the mother." They cite the case of Kiah v. Grenier, 56 N. Y. 220, and Matter of Lutz, 43 Misc. Rep. 230, 88 N. Y. Supp. 556, as authority for the proposition that if a relationship or kinship is established to legitimate children or brothers or sisters or father or mother of the female parent of the illegitimate person, then the words "take in the same manner as if the deceased had been legitimate," and the words "relatives on the part of the mother," or "relatives of the deceased on the part of the mother," include all those who under the law of descent or distribution can receive property. The plaintiff cites the case of Jackson v. Jackson, 78 Ky. 390, 39 Am. Rep. 246, to the effect that "relatives of the illegitimate on the part of the mother" is not as broad a phrase as "relatives through the mother," and they cite the case of Little v. Lake, 8 Ohio, 290, to the same effect.

[1] But the law of New York seems to make no distinction, and the Ohio case recognizes that fact. Under the language of the statutes, and considering the gradual recognition of the rights of illegitimates as individuals (or the gradual attempt to relieve them from the harsh penalties imposed by the common law, for that as to which they and the mother's *relatives* are not responsible), the provisions of the statutes as interpreted by the courts of New York make all those who would inherit or receive property, through the lines of descent and distribution, by a relationship established on the part of the mother of the decedent, competent and entitled to receive the property to the same extent and by the same channels of inheritance as if the deceased had been a legitimate child.

It is evident that the father (not being recognized as a relative, even though known, and in the eyes of the law being unknown so far as the right to inherit is concerned, because of his wrongdoing) cannot, without special legislation, be considered in the category of a relative or next of kin for the purpose of receiving property in spite of his wrong.

But, as has been said, the innocent persons who are recognized by the law as relatives through the mother, should not be penalized in a mere attempt to preserve the common-law idea that an illegitimate person could be related to no one. If the relationship is recognized for the purpose of allowing certain relatives to inherit, no public policy and no advantage from a moral standpoint will be achieved by increasing the stigma upon the illegitimate, with the collateral members of the family, while softening the feelings of those near enough to inherit a portion of the property. In fact, the opposite method of distribution might have more influence upon those who are directly responsible for the existence of the illegitimate person.

[2] The provisions of the law relating to distribution and descent in general have been in effect many years and were adopted long before the provisions allowing those related to an illegitimate to take the property. In the case of personal property, the distribution has thus, for a long time, been to the widow, husband, children, or next of kin, and "next of kin" (the husband or widow not being included within those words) included collaterals and their representatives or descendants. In the case of real property, after the father and mother, all collateral relatives are made heirs, and the words "relatives of the deceased on the part of the mother," when added to a statute by which all the collaterals are relatives or next of kin, would seem to mean simply relatives of all degrees on the side of the mother.

Chapter 489 of the Laws of 1913 of New York extends the law of descent by preventing escheat where stepchildren are in being. This shows the tendency of the law, but also indicates that before this statute escheat might have resulted, and does not help the Kress or Bader claimants.

Nor is there any merit in the contention that this use of the word "relatives" would be enlarging the term "relatives" so as to include all of the next of kin within the provisions of the New York statutes when referring to those who may be entitled. When it is considered that the husband and wife are expressly added, there would seem to be no point in the difference between the words "relatives" and "next of kin" in determining the persons that are referred to by these various provisions.

If, therefore, the collateral members of the Bonneville family and their descendants were within the terms of the New York statutes of descent and distribution, at the time of the death of Mrs. Bader, and if all of those individuals were to be considered relatives of Mrs. Bader on the part of her mother, and if the living relatives could inherit and take as next of kin, then the provisions of section 2732, subdivision 16, which would distribute some part of the surplus equally between the next of kin of the prior deceased husbands of the deceased, would never be called into application, either with respect to the property received through the deceased husband or otherwise. This section adds the relatives of the deceased husband to the next of kin of the decedent, by the provision that "such next of kin shall be deemed next of kin of the deceased," which of course does not make them relatives; but, on the other hand, they are not made "next of kin." They are merely to be *deemed* next of kin for the purposes of

the statutes, with respect to the property received from that prior deceased husband. They cannot receive other property in any event, and cannot be considered "next of kin" so as to prevent the happening of the contingency which must occur before they can even receive the share which came from their relative. This disposes of the only claim of the Kress and Bader families to the *entire personal* property. Inasmuch, therefore, as under the statute of descent the Bonneville claimants took as relatives, and under the laws of distribution as next of kin or relatives of the decedent (Matter of Davenport, 172 N. Y. 454, 65 N. E. 275), there was no failure of persons entitled to take.

The Kress and Bader claimants can never be "deemed next of kin," so as to share in the surplus, and they are not to be called in to prevent an escheat upon the failure of other persons entitled. In fact, they could only partially defeat escheat, if they were right in their contention that the Bonneville claimants should be excluded.

It is evident that Mrs. Bader kept the mutilated birth certificate (having years after her arrival in this country erected a monument to her mother, while concealing from her husbands' relatives the exact relationship existing between herself and the Bonneville family) from a realization of her position. The chance remark credited to her that her mother had ten children would seem to be a mistaken repetition of some enumeration or statement as to the branches of the Bonneville family. It all goes to show that Mrs. Bader lived throughout the years of her life in full appreciation of the situation, and yet made no testamentary provision for the Kress or Bader families. She must be presumed to have known that as between the Kress and Bader relatives, or as between those families and the Bonneville family, a designation by will would transmit her property as she might wish. Her failure to make such disposition may indicate that she desired them to receive nothing, or may indicate that she realized that the relationship through her mother could be traced, and did not wish to interfere with the rights of those who might be entitled by law to whatever property she might leave.

The state of New York will be paid the legal tax, and the balance of the property will be decreed to belong to the "Bonneville" claimants as they may be included or as their interests may be made to appear in the decree to be entered or proceedings at the foot thereof.